56 So.2d 233

**SINAGRA v. ILLINOIS CENT. R. CO.**

No. 39541.

Nov. 5, 1951.

Rehearing Denied Dec. 10, 1951.

———◆———

Carroll Buck, Amite, Lemle & Kelleher and H. Martin Hunley, Jr., all of New Orleans, J. H. Wright, General Counsel, Chas. A. Helsell, General Sol., Chicago, Ill., for defendant-appellant.

Joseph A. Sims, Hammond, L. B. Ponder, Jr., Amite, for plaintiff-appellee.

MOISE, Justice.

This is a suit for damages alleged to have been sustained by plaintiff shipper as a result of delayed handling of a carload of green peppers by defendant carrier. The trial court rendered judgment for the full amount prayed for, $2,866.68, with legal interest from judicial demand; and defendant has appealed.

Plaintiff, Charles Sinagra, doing business as C. & S. Produce Company alleges that on June 13, 1946, through his agent, Joseph J. Giacone, he shipped 813 hampers or crates of sweet "California Wonder" peppers, from Hammond, Louisiana, via Illinois Central Railroad Company, Refrigerator Car No. ART 73842, consigned to C. & S. Produce Company, St. Louis, Missouri. The following day, he diverted the shipment, still in transit, to Joseph Basile Company, San Francisco, California, Broker and Distributor. (The diversion of the shipment had no bearing on the subsequent delay in handling of the car in question, since, according to the Illinois Central freight schedule, the first stage in the route of a shipment to San Francisco from Hammond, Louisiana, would be via McComb, Mississippi, to St. Louis.) The shipment did not reach San Francisco until June 27, 1946, five days after its scheduled arrival, having been "lost in the yards" in California—such being the admission of defendant. During this five-day interval a large portion (241 hampers) of the shipment is alleged to have spoiled and to have been disposed of on orders from the Department of Agriculture, State of California. Furthermore, the market price range on this type of green pepper dropped by eight cents (from 15–20 to 7–12).

Plaintiff's claim for $2,866.68 damages sustained is based on a price of 17½ cents per pound (the average of the market price of 15¢ to 20¢ on June 22, 1946, the date of scheduled arrival) for 20,325 pounds of peppers (813 crates at 25 pounds to the crate). From a hypothetical gross of $3,556.87 thus estimated, plaintiff deducted the freight charges, drayage and demurrage, totalling $508.91, which would have been incurred in any event, plus the sum of $181.28, his actual net realization from the carload of peppers, or a total deduction of $690.19.

We note, initially, that there are two distinct competent elements of plaintiff's loss: (1) the price differential on the entire shipment between the scheduled date of arrival and the actual date of arrival, and (2) the value, as of the scheduled date of arrival, of those hampers and crates alleged to have been disposed of on a Violation Notice issued by the Department of Agriculture, State of California.

Defendant has offered no affirmative evidence in refutation of plaintiff's claim, but relies here, as in the district court, on the alleged insufficiency of the proof submitted in support thereof.

■ Plaintiff has tendered the following documentary evidence:

(1) Defendant's Original Bill of Lading, issued on June 13, 1946, and Diverted Bill of Lading, issued on June 14, 1946, showing a shipper's loading count of 16,260 pounds (for 813 bushel boxes, hampers), and *not* 20,325 pounds, as subsequently alleged in plaintiff's petition and as a basis upon which recovery was allowed. Neither figure represents an actual weighing, but is an estimate (based on 20 or 25 pounds to the crate, respectively); since there is nothing in plaintiff's testimony as adduced on trial to justify the use of the larger figure in preference to the one originally declared by defendant and evidenced in writing, we will limit his recovery accordingly.

(2) Original Inspection Certificate No. 27692 of the United States Department of Agriculture and Louisiana Department of Agriculture and Immigration, showing that the shipment was in good condition when it left Hammond, Louisiana, on June 13, 1946.

(3) Market News Service (a bulletin) of United States Department of Agriculture and California Department of Agriculture for June 18, 20, 21, 24, 25, 26 and 27, quoting wholesale fruit and vegetable prices in the San Francisco market on the dates in question, said dates covering time of scheduled arrival and time of actual arrival of the instant shipment.

(4) Statement of account issued by plaintiff's broker in San Francisco, Joseph C. Basile, showing total sales of 460 crates, 2 hampers, and 119 damaged hampers, for a gross price of $690.19, with costs amounting to $508.91, and a net to the plaintiff shipper of $181.28.

■ Defendant objected to the introduction in evidence of the Bills of Lading, because on their face they do not show that plaintiff was the owner of the peppers, but merely show that they were shipped by one Joseph J. Giacone. We are of the opinion that plaintiff's allegation, and subsequent testimony, that Giacone was his agent, is corroborated by the record itself.

■ The Inspection Certificate, issued jointly by the United States Department of Agriculture and Louisiana Department of Agriculture and Immigration, and the Market News Service, issued jointly by the

United States Department of Agriculture, Production and Marketing Administration, and the California Department of Agriculture, Bureau of Market News, were properly admitted in evidence, under LSA–R.S. 13:3711 and LSA–R.S. 13:3713, which provide:

"3711. Copies of any books, records, papers or other documents of any of the executive and administrative departments, boards, and agencies of this state, and copies of any books, records, papers, or other documents of any of the political corporations, bodies politic, boards, departments and agencies of this state and the parishes and municipalities thereof, when certified as being true copies by the official, officer or employee in whose custody they may be, shall be admitted in evidence in all courts of this state, equally with the originals of such books, records, papers, or other documents."

"3713. The official records and other documents, being enactments or regulations or decisions or rulings or proceedings or reports or other official acts, of the congress or any federal executive department or subdivision therein, or of any federal court or commission or board or agency or public institution, may be evidenced by the federal register or by a printed book or pamphlet or periodical purporting to be published by the U. S. Government Printing Office at Washington, D. C., by authority, which shall be received in all courts and proceedings of this state and by all officers

of this state as prima facie evidence of the records, documents, enactments, regulations, decisions, rulings, proceedings, reports or other official acts of the departments, subdivisions, courts, commissions, boards, agencies or public institutions from which they purport to emanate, and the same may be read and referred to as such in any and all courts of this state."

██ Without question, the original Inspection Certificate, issued under joint Federal and State authority, and bearing on its face the notation that it is "admissible as prima facie evidence in all courts of the United States and Louisiana" needed no further identification or authentication to be received in evidence. With regard to the Market News Service bulletins, it is our interpretation that although LSA–R.S. 13:3713 *apparently* limits printed Government publications, reports, etc., to be received mandatorily in evidence to such as are published by the Government Printing Office in Washington, D. C., only, this could not have been the Legislative intent, in view of the well-known fact that many government agencies and departmental districts issue printed or mimeographed matter from their local offices. The purpose of Act 70 of 1942, LSA–R.S. 13:3713, was to eliminate additional identification or authentication of this type of documentary evidence and expedite the handling of lawsuits in which it is utilized. Furthermore, in the instant case, the printed matter was offered merely in corroboration of plain-

tiff's testimony as to market value; and defendant placed no witnesses on the stand to rebut such affirmative evidence.

 We are therefore constrained to hold that plaintiff shipper has proven at least the first element of his damages, the price differential on the entire shipment. In arriving at the quantum, in the absence of other proof, he cannot recover more than the weight estimate contained in his original bills of lading, namely, 16,260 pounds, or a total loss through falling price of $1,300.80.

It is otherwise with that portion of his loss bearing on the damaged portion of the shipment (allegedly 241 hampers). The Statement of Account rendered by Joseph C. Basile is not sufficiently identified to remove it from the realm of hearsay evidence. Furthermore, neither the original nor a certified copy of the Violation Notice issued by the California Department of Agriculture was produced in substantiation of plaintiff's claim for spoilage. While plaintiff has proven that the carrier received the shipment in good condition, he has failed to prove judicially what portion of the shipment arrived at destination in a damaged condition and the amount of the consequent loss due to spoilage. Bancroft v. Yazoo & M. V. R. Co., 194 La. 115, 118, 193 So. 481.

For the reasons assigned, the judgment appealed from is annulled and set aside, and it is now ordered that there be judgment in favor of plaintiff and against defendant in the amount of $1,300.80, plus legal interest from date of demand (covering damages representing the difference in the market price of the peppers) and

It is further ordered that this case be remanded to the district court with instructions to receive additional evidence with respect to plaintiff's claim for damage for spoilage, all in accordance with law and the views hereinabove expressed; plaintiff appellee to pay the costs of this appeal, and all other costs to await the final determination of this litigation.

PONDER, J., recused.