GULOTTA, Judge.
These are consolidated suits growing out of an industrial accident on October 25, 1967, in which the plaintiff was injured by electrocution during the construction of the Belle Chase water purification plant.
At the time of the accident, plaintiff, an iron worker employed by a subcontractor, was threading a reinforcing rod 25 feet in length into a beam while working close to the edge of the three-story structure, when the beam came into contact with a Louisiana Power & Light Company (LP&L) power line located approximately 5 feet 7 inches from the nearest point of the building. Plaintiff fell to the ground and was seriously injured.
Plaintiff seeks recovery from LP&L. Rockwood Casualty Company (formerly Coal Operators Casualty Company), the compensation insurer of plaintiff’s employer, seeks reimbursement for medical and workmen’s compensation paid to plaintiff. Judgment was rendered in favor of plaintiff and against LP&L in the sum of $165,000.00. A further judgment ordered reimbursement to Rockwood out of the proceeds of the award. Defendant appeals. Plaintiff, in answer to the appeal, seeks an increase in the amount of the award.
In seeking reversal, LP&L contends first that the judgment is based on a violation[1] of the requirements of the National Electrical Safety Code (H81) which was erroneously allowed to be filed into evidence without the proper foundation being laid for its introduction. Defendant claims that the trial judge erred in allowing the Code to be introduced into evidence at the conclusion of plaintiff’s case without identification by a competent expert, or without identification with an appropriate ordinance of the governing body. According to defendant, without proper identification, LP&L is denied the right of cross-examination of the witness on the pertinent provisions of the Code.
Secondly, LP&L claims that although it had knowledge of pilings being driven at the construction site and provided protection by covering the wire with temporary covers during the pile driving work, it cannot be charged with knowledge that a three story-building would be constructed to replace a one-story structure and would be built 5 feet 7 inches from a wire approximately 31 feet from the ground. Defendant argues it is not required to anticipate that a contractor will construct a building in violation of safety standards by locating the building within the prohibited distance of an uninsulated wire, nor are they required to anticipate that a construction worker would extend a 25 foot steel rod beyond a building and make contact with its power line. According to LP&L, it cannot be charged with a breach of a duty because foreseeability is lacking under the circumstances, and therefore a finding of negligence in this instance is erroneous.
The third thrust of defendant’s appeal is that plaintiff either saw or should have *783 seen the wire and taken proper precautions for his safety. According to LP&L, plaintiff’s contributory negligence is a bar to recovery. Finally, defendant complains of the excessive amount of the award.
Plaintiff’s position is that LP&L violated the high standard of care required of utility companies by not adhering to the requirements of the Code which specify that uninsulated wires, such as the wire in the instant case, are to be located at a minimum distance of 8 feet horizontally and 8 feet vertically from the nearest part of a building or structure. According to plaintiff, LP&L had knowledge of the construction work but failed to provide safety precautions or to relocate the wire in accordance with the minimum distance requirements. Plaintiff claims that LP&L is charged with the duty to foresee that the construction work might bring a worker in close proximity to the wire. Plaintiff further maintains the trial court properly exonerated him from contributory negligence. In answer to the appeal, however, he complains of the inadequacy of the award.
We are unable to reach a consideration of the negligence and quantum questions raised by this appeal because we are compelled to remand this matter. While we hesitate to do so because the litigation will be prolonged and because the entire record is before us nevertheless, we cannot reach a result based on the requirements of a code which is not properly before us.
At the outset we are confronted with an evidentiary question raised by defendant LP&L which involves the admissibility of the National Electrical Safety Code (H81), the violation of which serves as a basis for holding LP&L negligent.
The code sought to be admitted is a publication of the United States Department of Commerce and is designated as “safety rules for the installation and maintenance of electrical supply and communication lines.” The introduction into evidence of such documents is covered under LSA-R.S. 13:3713 which provides:
“The official records and other documents, being enactments or regulations or decisions or rulings or proceedings or reports or other official acts, of the congress or any federal executive department or subdivision therein, or of any federal court or commission or board or agency or public institution, may be evidenced by the federal register or by a printed book or pamphlet or periodical purporting to be published by the U. S. Government Printing Office at Washington, D. C., by authority, which shall be received in all courts and proceedings of this state and by all officers of this state as prima facie evidence of the records, documents, enactments, regulations, decisions, rulings, proceedings, reports or other official acts of the departments, subdivisions, courts, commissions, boards, agencies or public institutions from which they purport to emanate, and the same may be read and referred to as such in any and all courts of this state.” (emphasis ours)
See also LSA-C.C. art. 1393.
In Sinagra v. Illinois Cent. R. Co., 220 La. 205, 56 So.2d 233 (1951), the Louisiana Supreme Court permitted the introduction into evidence without identification or authentication government publications which were not printed by the government printing office in Washington, D. C., as required under the provisions of LSA-R.S. 13:3713. The court reasoned that in adopting LSA-R.S. 13:3713, the legislature did not intend to restrict the provisions of the statute only to government publications which had been printed by the government printing office in Washington, D. C., since it is a well-known fact that many governmental agencies and departmental districts issue printed or mimeographed materials from their own office. In Sinagra, the court permitted the *784 introduction into evidence without identification or authentication certain Market News Service bulletins not printed by the Government Printing Office in Washington. Following the rationale of the Sina-gra case in interpreting LSA-R.S. 13 :3713, we conclude that the Code is admissible in evidence without identification or authentication.
Although we conclude the document is admissible, we are confronted with the question of how much probative weight can be given to the Code absent competent testimony that the Code serves as the basis for custom or practice of the electrical industry in Plaquemines Parish, or absent introduction into evidence of an ordinance of the governing body which adopts by reference the Code as the standard of safety.
Plaintiff’s claim is based on LP&L’s violation of the minimum requirements as set forth in H81. A finding of negligence on the part of LP&L is predicated on the proximity of uninsulated wires 5 feet 7 inches from the nearest point of the building in violation of the provisions of H81 which provide that such an insulated wire have a vertical and horizontal clearance of 8 feet. Before the violation of the safety standards and requirements set forth in the Code can serve as the basis for finding a breach of duty owed by LP&L, it is necessary that competent evidence be offered to show that the Code is the accepted standard of the parish, municipality or governing authority.
LSA-R.S. 33:1368 provides:
“Any municipality may adopt a building, electrical, traffic, or other code by ordinance of the governing authority without the necessity of publishing the text of the code. The code shall be identified in the ordinance and signed by the mayor and by the secretary or clerk of the municipality.”
In the instant case, no evidence was offered to show the adoption of such an ordinance nor was any testimony elicited connecting H81 to the custom and standard of practice in the community or municipality. We might point out that no state authority has been cited nor have we found any such authority which has adopted H81 as the standard of conduct for electrical safety requirements throughout the state. Nor can we find any authority for permitting consideration of the Code under the provisions of LSA-R.S. IS :422 relating to judicial notice.[2] Under the circumstances, we cannot say that the requirements as set forth in the Code, if violated, can serve as the basis for a finding of negligence.
This result is not inconsistent with prior jurisprudence. In Webb v. Louisiana Power & Light Co., 199 So. 451 (La.App. 2nd Cir. 1940), the court, in concluding that the defendant did not violate the requirements of the Code, stated that the Code was offered in evidence; however, the opinion does not state what foundation *785 was laid for its introduction. Also, in Layne v. Louisiana Power & Light Co., 161 So. 29 (La.App. 2nd Cir. 1935), and Boudreaux v. Louisiana Power & Light Co., 16 La.App. 664, 135 So. 90 (1931), we find no discussion concerning the foundation which was laid for the introduction of the Code into evidence. It appears that in none of these cases was the question of the admissibility of the Code in issue. However, in Calton v. Louisiana Power & Light Co., 56 So.2d 862 (La.App. 2nd Cir. 1952), there was testimony from an expert witness (engineer) on the requirements and standards of the Code. Also in Harper v. New Orleans Public Service, Inc., 300 So.2d 546 (La.App. 4th Cir. 1974), writs denied, 303 So.2d 182 (La.1974), we said 300 So.2d at page 549:
“ * * * Any standard adopted by industry, particularly those relating to safety requirements, must be adopted by the governing body of a municipality, city, parish, or state before they can be accepted as the standard of safety for that governing body whether it be a municipality, a city or otherwise. * * * ”
See also 75 A.L.R.2d 778, 781 for a discussion of the admissibility into evidence of standards and codes. We conclude no probative weight can be given to the requirements of the Code without the proper foundation being laid for its consideration. Therefore, under the authority of LSA-C. C.P. art. 2164 [3] we deem it appropriate and proper that the matter be remanded to the trial court in order to afford an opportunity for all parties to submit any evidence which they deem appropriate to show the applicability of the National Electrical Safety Code (H81) and for the trial judge to render such judgments that are proper after the introduction of such evidence.
Accordingly, the judgment appealed from is set aside and annulled, and the matter is remanded to the trial court for further proceedings in accordance with the views expressed herein and in accordance with law.
Set aside and remanded.

. Plaintiff claims the line was located 5 feet seven inches from the edge of the unfinished building and the electrical safety code requires that uninsulated 13KV power lines be located a minimum distance of 8 feet horizontally and 8 feet vertically from the nearest point of the building.

. LSA-R.S. 15:422 reads as follows :
“Judicial cognizance is taken of the following matters:
“(1) The laws of this state and of the United States, whether public or private, but not municipal or parochial ordinances;
“(2) The proclamation of the governor of this state and of the President of the United States;
“(3) The seals of all the courts of this state and of the United States;
“(4) The accession to office and the official signatures and seals of the public officers of this state and of the United States;
“(5) The existence, title, national flag and seal of every foreign country and sovereign recognized by the executive of the United States;
“(6) The laws of nature, the measure of time, the facts disclosed by the calendar, the facts of geography, the geographical and political divisions of the world, the facts of history and the political, social and racial conditions prevailing in this state;
“(7) The matters pending in the court taking such cognizance and who are its attorneys.”

. LSA-C.C.P. art. 2164 reads :
“The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.”