468 So.2d 723 (1985)
Mary BROWN, Duly Appointed Tutrix of Kary Daily & Myra Daily
v.
John HARLAN, Fernando Bustamente & XYZ Insurance Company.
No. 84-CA-534.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1985.
Motion to Dismiss Granted June 17, 1985.
*724 James A. Gray, II, Jefferson, Bryan & Gray, New Orleans, for plaintiff-appellant.
David S. Kelly, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, New Orleans, for defendants-appellees.
Before BOWES, GAUDIN and DUFRESNE, JJ.
BOWES, Judge.
This case is appealed by plaintiffs from a judgment in the lower court in favor of defendants and dismissing plaintiff's wrongful death action. The judgment appealed from is affirmed for the reasons following.
On July 1, 1981, Sandra Daily (plaintiffs' decedent) checked into the Airport Rodeway Inn Motel (hereinafter referred to as the Rodeway Inn), along with her two minor children, her sister, Mary Brown, and her daughter; her cousins, Charles Roach and Carolyn Jackson; and Rogers Castellanos, Sandra's boyfriend. All of the party, except for Mr. Castellanos, were living at the home of Ms. Brown. On that day, some plumbing work was being done to Ms. Brown's house, and evidently there was no water and no sanitary facilities. Mr. Castellanos offered to, and in fact did, take the entire family to spend the night at the Rodeway Inn. Sandra and Castellanos shared one room; the rest of the party shared the other room.
After checking-in, the family went to their respective rooms, and, at some time shortly thereafter, decided to "go swimming" in the motel's pool. Mr. Castellanos, the only member of the party who could actually swim, left the motel in order to buy food for the group. Soon after he left, the party did go out to the pool. Charles and Caroline did not go into the water at all. The children, and Ms. Brown and Ms. *725 Daily, did go into the pool. The children stayed only a couple of minutes, then got out because they got cold. Ms. Brown and Ms. Daily stayed in, walking in the water holding onto each other (holding hands). According to Ms. Brown, as they were walking (in water up to their chins), suddenly Ms. Brown slipped and she lost hold of her sister. Ms. Brown apparently panicked but made her way close to the side of the pool whereupon Caroline pulled her out. Ms. Brown suddenly then realized she could not, or did not, see her sister. Evidently they became extremely alarmed and began shouting. A hotel employee, Tyrone Smith, was flagged down. Accounts diverge at this point, but, ultimately, Ms. Daily was pulled from the pool, and some attempts to revive her were made. She was taken by an emergency vehicle to a hospital. It is not clear from the record at what point Ms. Daily had died, but the coroner confirmed the cause of death was drowning.
Ms. Brown obtained the necessary tutorship of her niece and nephew, and filed the present action. After a jury trial on the merits, the jury found, by answers to special interrogatories, that defendants were not guilty of any negligence. Based on this finding, the trial court dismissed plaintiff's case.
On appeal, plaintiff has specified several errors in the proceedings below. Plaintiff contended that it was error to deny certain jury charges, and her special interrogatories; that it was error to refuse to qualify Dr. Ivan as an expert for plaintiff's purposes; that the trial court should have admitted into evidence certain health department records and also the State's Sanitary Code; and that the trial court should have continued the trial to permit one of plaintiff's witnesses to testify as to the stated reports and records.

A. Health Department Report

Plaintiff attempted to introduce into the record certain inspection reports from the Jefferson Parish Health Department, which inspected the pool on July 13th, 14th and 29th of 1981. The report was made by a Mr. Pailet, who, although a subpoena was issued, was not served and so was not present at trial. Plaintiff had attempted to contact Mr. Pailet, who was out of town, in order to have him testify as to the report. Plaintiff requested a "one-day break" in the trial in order to attempt to obtain Mr. Pailet's testimony. The trial court permitted the report to be proffered, but refused admitting it into evidence. Further, the trial court and counsel agreed that if plaintiff were able to obtain Mr. Pailet after he closed the case, that plaintiff's case would be reopened (the following day) to permit Pailet's testimony.
Plaintiff avers that the report should have been admitted as an exception to the hearsay rules of evidence as a business record. The copy that plaintiff proffered is not in the record. However, a copy of this report was attached to plaintiff's brief. Examining this, we find that the trial judge properly excluded the report, which contains subjective impressions of the sanitarian who prepared it. The conclusions of Mr. Pailet were based on his observations, and defendant correctly concludes that he is entitled to cross-examination on such report. See Deville v. Aetna Insurance Co., 191 So.2d 324 (La.App. 3rd Cir.1966); Robinson v. St. Paul Fire and Marine Ins. Co., 298 So.2d 282 (La.App. 1st Cir.1974).
As to plaintiff's request for a "one-day break", the trial judge acted properly in permitting plaintiff to re-open his case upon the appearance of Mr. Pailet. Plaintiff's counsel agreed with the action of the trial court, and took no further action in this regard. Mr. Pailet did not appear at trial and so no evidence as to the condition of the pool as of July 13th was adduced at trial beyond the testimony of Mr. Bustamente, Rodeway's manager, who admitted that as of that date there was some problem with the chlorinator in the pool (the significance of this will be discussed hereinafter). It was incumbent upon plaintiff to ascertain whether his witnesses had actually been subpoenaed to appear. His failure to do so until immediately before trial does *726 not compel us to conclude that the trial court should have continued the trial. Plaintiff received the benefit of the extra day which he agreed to accept. The trial court did not err in this respect.

2. State Sanitary Code

Plaintiff sought to introduce into evidence that portion of the sanitary code which pertains to swimming pools and beaches (Chapter IX). Defendant timely objected. That portion of the code, not in the record before us, was according to counsel's colloquy, a certified copy of such laws. Plaintiff stated that a representative of the Jefferson Parish Health Department would read the regulations and testify as to their authenticity. It was not offered as an exhibit in itself for the jury to examine. The trial court sustained the defendant's objection.
In Burley v. Louisiana Power and Light Co., 306 So.2d 781 (La.App. 4th Cir. 1975), the Fourth Circuit found that admission of the National Electrical Safety Code could be admitted into evidence; however, it was necessary that competent evidence be offered to show that the Code is the accepted standard of the parish or governing authority. In that case, plaintiff's claim was based on violation of those standards in that Code and the court was unable to establish that violations of such code could serve as a basis for negligence.
Similarly, in this case, at least part of plaintiff's claim appears to be based on a violation of the Sanitary Code. Plaintiff offered a certified copy of the code, and planned to call a representative of the Health Department to read them to the court. We find nothing which would have prohibited him from doing so. See Merchant v. Fuselier, 365 So.2d 852 (La.App. 3rd Cir.1978), for the holding that a city ordinance must be proved like any other fact unless there is a certified copy filed of which a court can take judicial cognizance. See also Louisiana State Board of Medical Examiners v. Lensgraf, 101 So.2d 734 (La.App. 1st Cir.1958). Here we have a certified copy which could have been admitted into evidence; at minimum, it could have been read to the jury by a competent representative of the Department. It would have been incumbent on the trial judge to instruct the jury, at the appropriate time, that violation of the Code does not necessarily constitute a basis for negligence, and let the jury weigh the evidence. Although it may have been error not to inform the jury of the contents of the Code, we are not compelled to rule on this point because of our further findings in favor of defendant set forth hereinafter.

3. Testimony of Dr. Ivens

Dr. Ivens described herself as a medical microbiologist with a sub-specialty in medical mycologythe study and identification of fungi and algae as it pertains to the human patient.
Plaintiff was attempting to establish that algae was probably present in the pool on the night of the accident, and that the presence of the algae made the bottom of the pool slippery, causing the decedent to slip and eventually drown.
The trial court correctly limited the scope of her testimony to the properties and general characteristics of algae that can be found in the local area. As a matter of fact, there was some testimony from Dr. Ivens about the slippery effect of algae, although not in relation to the pool in question, and properly so. There was no evidence that the pool appeared to have algae on the night of the drowning. Dr. Ivens testified that algae could be present and not observable. The jury had the benefit of that testimony, which it could consider in connection with the rest of the evidence presented. We disagree with plaintiffs' contention that even considering the exclusion of the Health Department Report, there were sufficient facts in the record to support further expert testimony of Dr. Ivens. The limitation of her expertise by the trial court was correct.

4. Jury Instructions and Interrogatories

Plaintiff alleged several errors in the jury instructions, such as failure to instruct on the doctrines of res ipsa loquitur, strict *727 liability, definitions of "defect" and "custody", instructions on damages, etc.
Without determining the validity of each and every specification of error in this area, we agree with plaintiff that the jury should have been instructed properly on the doctrine of strict liability and, additionally, correctly instructed on the duty of an innkeeper. The incorrect charge as to an innkeeper's duty and the absence of a charge of strict liability compels us to conclude that the jury was not properly instructed as to the applicable law, and the jury's verdict was, therefore, not rendered in accordance with the proper law and facts adduced at trial.
Recently, in Heine v. Adams, 464 So.2d 836 (La.App. 5th Cir.1985), this court stated:
In West v. U.S. Fidelity & Guaranty Co., 405 So.2d 877 (La.App. 4th Cir.1981), the court reiterated that a proper charge of all facets of the law involved is essential in order that the rights, liabilities and obligations of all parties concerned may be fairly adjudicated. The Court in West, supra, at 879 went on to state:
Where there is question that factual findings are not made pursuant to a clear understanding of the applicable law, the charges will be deemed insufficient or inadequate; and where erroneous charges preclude the jury from reaching a verdict in accordance with the law and facts, the Court of Appeal should render a judgment on the record before it.
The adequacy of a jury instruction, however, must be determined in light of the jury instructions as a whole. Trapani v. State Farm Fire & Cas. Co., 424 So.2d 449 (La.App. 5th Cir.1982).
In Heine, we found that the incomplete jury charge had a prejudicial effect precluding the jury from reaching a verdict based on the law and facts and, with the complete record, this court adjudicated the case as a trial de novo. We come to the same conclusion here. See also Boyette v. Auger Timber Co., 403 So.2d 800 (La.App. 2nd Cir.1981).
The jury instruction on "Negligence", page 7 of the jury instructions, and charge # 6, do not correctly state the duty of care owed the plaintiff in this case. The charges as a whole do not address the question of strict liability, except in a vague manner, and do not discuss the elements thereof. Strict liability is one of the two theories of this case.
The Louisiana Supreme Court, in Kraaz v. La Quinta Motor Inns, Inc., 410 So.2d 1048 (La.1982), held that the innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. Thus, a guest is entitled to a high degree of care and protection. The U.S. 5th Circuit, analyzing this degree of care, stated in Banks v. Hyatt Corp., 722 F.2d 214 (1984), that "the distinction is no doubt rooted in the belief that business patrons of innkeepers, like those of common carriers and unlike those of other businesses, have entrusted their personal security to the innkeeper." The innkeeper is not an insurer of his guests, but he is obligated to take reasonable steps to minimize the risk to his guests within his sphere of control. Banks, supra.
Thus, contrary to the jury instruction and charges, the standard of conduct owed to the plaintiff was a higher degree of care than that of so-called "ordinary" care.
Rodeway Inn, as innkeeper-ownercustodian of the swimming pool, also owes a duty to plaintiff under the strict liability theory of C.C. Art. 2317.
The Supreme Court, in Kent v. Gulf States Utilities Co., 418 So.2d 493 (La. 1982), explained the difference in the burden of proof in negligence cases and strict liability cases:
In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner *728 knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing.
In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective). The resulting liability is strict in the sense that the owner's duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts. Under strict liability concepts, the mere fact of the owner's relationship with and responsibility for the damagecausing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. If the owner breaches that absolute duty to discover, he is presumed to have discovered any risks presented by the thing in custody, and the owner accordingly will be held liable for failing to take steps to prevent injury resulting because the thing in his custody presented an unreasonable risk of injury to another. Kent at pg. 497.
Under either theory, the duty which arises is the same. The extent of the duty and the resulting degree of care necessary to fulfill the duty are dependant on the particular facts and circumstances of the case.
There was conflicting testimony as to whether the light inside the pool was on, with the preponderance of evidence indicating it may very well have been off. There was, by all accounts, no rope separating the deep water from the shallow. However, we find there was no preponderance of evidence to convince us that the pool bottom was slippery due to the presence of algae in the pool.
Under the theory of negligence (as it appears to the high degree of care owed a guest by an innkeeper) or strict liability, any or all of the above problems could very well have constituted an unreasonable risk of harm to the plaintiff (or defect). Without deciding that issue, however, we are constrained to find that under either theory, plaintiff voluntarily assumed the risk of harm presented.
Assumption of risk is a traditional defense in a negligence claim and was specifically pleaded by defendants as a bar to plaintiffs' claim. See, i.e., Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1976); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971). Fault of the victim is a defense to a claim under the articles imposing strict liability. Loescher v. Parr, 324 So.2d 441 (La.1975). Fault of the victim in this context means the conduct of the victim was a substantial factor in causing the injury complained of. Assumption of the risk is an aspect of victim fault in our jurisprudence. Ruffo v. Schwegmann Bros. Giant Supermarkets, Inc., 424 So.2d 470 (La. App. 5th Cir.1982).
In order for a plaintiff to assume a risk, he must knowingly and voluntarily encounter the risk which causes his injury.
"Knowledge" is the mainstay of this defense, and it must be proved by a preponderance of the evidence.
Recovery is denied if the plaintiff knew or should have known of the risk involved....
However, for purposes of a knowing assumption of risk, we impute knowledge to a plaintiff, not because he was in a position to make certain observations, but only when he actually makes those observations and, from them, should reasonably have known that a risk was involved. Prestenbach, supra.
Mary Brown testified that no one in the party, including Sandra, could swim. *729 They knew there were no lifeguards. The absence of the rope and the (possible) darkness of the pool were observed by other members of the party, including Ms. Brown. The pair (Mary and Sandra) were walking in water up to their chins when Ms. Brown slipped. The deposition of Rogers Castellanos, admitted into evidence for perpetuation, revealed that several days before the drowning he had taken the victim to the very same pool and (apparently) given her some rudimentary swimming lessonsMs. Daily was familiar, then, with the pool itself. Castellanos, an experienced swimmer, discussed with Ms. Daily the dangerousness of going into the pool (without knowing how to swim) and asked the party to wait until he returned (from buying food) before they went into the water. There was no indication that Ms. Daily, a 25-year old woman, was physically or mentally impaired and therefore possibly incapable of understanding the risks involved. That she went into the pool voluntarily is undisputable. We are bound then to conclude that Sandra Daily understood the risk involved in going into an unguarded swimming pool at night, without certain safety equipment (specifically the rope) and without having the swimming skills, or the presence of some person who could swim in case of just such an emergency as arose; and that she voluntarily encountered such risk. Therefore, defendant is not liable to the plaintiffs in this action.
Accordingly, the judgment of the trial court dismissing plaintiff's suit is affirmed. Each party is to bear his own costs of this appeal.
AFFIRMED.