505 So.2d 177 (1987)
Jacob J. CHATELAIN
v.
PROJECT SQUARE 221, a Louisiana Partnership In Commendam, Gerald D. Hines & Associates and Gerald D. Hines, Individually.
No. CA-5422.
Court of Appeal of Louisiana, Fourth Circuit.
March 24, 1987.
Rehearing Denied April 15, 1987.
Writ Denied June 12, 1987.
*179 Bonnie L. Zakotnik, New Orleans, for plaintiff.
William H. Howard, III, John P. Sneed, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendant-Project Square 221, A Louisiana Partnership in Commendam, Gerald D. Hines & Associates and Gerald D. Hines, Individually.
J. Walter Ward, Jr., Christovich & Kearney, New Orleans, for defendant-King & Company.
Wood Brown, III, Silvia Landry, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendant Verges Sheet Metal Works.
Arthur J. O'Keefe, Donovan & Lawler, Metairie, for defendant-United States Fidelity and Guaranty Company.
Herschel E. Richard, Jr., Cook, Yancey, King & Galloway, Shreveport, for Louisiana Association of Defense Counsel-Amicus Curiae.
Before BARRY, BYRNES and LOBRANO, JJ.
BARRY, Judge.

STATEMENT OF THE CASE
When the One Shell Square office building in New Orleans was completed the 17th floor remained unfinished and the mid-rise bank of elevators did not stop on that floor. Shell Oil later leased that floor and renovation work started. King & Company was retained by Herbert Levy (who coordinated the contractors for the owners/operators) to perform dry wall and other carpentry work. Verges Sheet Metal Works, Inc. was retained to install and re-route the air conditioning ducts. Selco Construction Company (a division of Sharp Electric, Inc.) was hired to do carpentry work, including the installation of new elevator doors, building a permanent wall around the elevator shaft, and demolition of the gypsum board temporary wall.
In order to re-route an air conditioning duct a hole was cut in the temporary wall.[1] The hole was estimated to be from 10 to 12 feet above the floor, approximately 6 to 7 inches square, and uncovered with no warning signs. According to Bernard Del Carpio, a carpenter who testified he inspected the hole for Levy (the coordinator), there was nothing covering the hole or evidence of any attempt to cover it, i.e., tape marks or screw holes. Levy claimed he never saw a hole before or after the injury.
Jacob Chatelain, 63 years old and a carpenter for 40 years, was employed by Selco. Chatelain and Doug Dossett were hanging doors on the 38th floor on March 26, 1982 when their supervisor, Dennis Razianno, told them to go to the 17th floor and construct temporary barricades by the elevators to keep out unauthorized persons.
Chatelain, Dossett and Razianno went to the 17th floor in a freight elevator. Razianno realized that he left the keys on the 38th floor, so he told Chatelain and Dossett to start work while he went back for the keys.
The two men finished before Razianno returned, so Chatelain decided to locate the studs and check the temporary wall which would be demolished by a crew of younger carpenters that evening. Chatelain got on a ladder, climbed to the open duct hole, and placed his hand inside to feel for the studs. An elevator passed and practically severed his right hand at the wrist.
Several witnesses testified the duct hole should have been covered or patched for safety reasons. Alvin McGathy (King & Company) and Albert Guillemet (Verges) testified they covered a hole in the elevator *180 wall, but it is not clear which hole was involved in Chatelain's accident. Guillemet declared sheetrock workers were responsible for closing up holes that were made for duct work. Leonard Guarassi (Verges) said the air conditioning men customarily covered such holes. He stated that Chatelain's injury occurred about seven weeks after Verges' employees were working in that area. Both Guarassi and McGathy testified that after the accident Levy accused them of leaving the hole uncovered.
Alleging negligence and strict liability, Chatelain sued the building owner-Project Square 221, Project Corporation, its operator-Gerald D. Hines and Gerald D. Hines & Associates, their insurer-Employer's Casualty Company, the air conditioning contractor-Verges Sheet Metal Works, and the framing and drywall contractor-King & Company. The owner, operator and their insurer third partied the two contractors for indemnification. United States Fidelity & Guaranty Company [USF & G], the workmen's compensation carrier for Sharp Electric, intervened to recover the stipulated compensation benefits and medical expenses of $58,287.98.
Interrogatories submitted to the jury and the responses are as follows:
1. Do you find that the wall in question, as it existed
 on the 17th floor of One Shell Square on March 26,
 1982, was defective under the existing conditions?
 X YES _____ NO
2. Did the owners, Project Square 221, Gerald Hines,
 Gerald Hines & Associates, have care, custody and
 control of the wall in question on March 26, 1982?
 X YES _____ NO
3. Do you find that the owners of the building, Project
 Square 221, Gerald Hines, Gerald Hines &
 Associates, were negligent, which negligence was
 a proximate cause of the injury?
 X YES _____ NO
4. Do you find that Verges Sheel Metal Works, Inc.,
 was negligent, which negligence was a proximate
 cause of injury?
 X YES _____ NO
5. Do you find that King and Company was negligent,
 which negligence was a proximate cause of
 the injury?
 _____ YES X NO
6. Do you find that the plaintiff, Jacob Chatelain,
 assumed the risk of his injury?
 X YES _____ NO
7. Do you find that the plaintiff, Jacob Chatelain,
 was negligent, which negligence was a proximate
 cause of the injury?
 X YES _____ NO
8. If you have found that the owners of the building
 to have the care, custody and control of the wall in
 question, and have found that the wall in question
 was defective, and/or if you have found any of the
 following parties negligent then express in terms
 of percentage the fault or negligence attributable
 to each party:
 (a) Project Square 221
 Gerald Hines
 Gerald Hines & Associates 40 %
 (b) Verges Sheel Metal Works, Inc. 22 %
 (c) King and Company 0 %
 (d) Jacob Chatelain 38 %
 100 %
9. What amount of money will fairly and adequately
 compensate the plaintiff, Jacob Chatelain,
 for the damages he suffered as a result of
 the injury?
 $102,000.00
If you have answered
 Question No. 1 YES
 Question No. 2 YES
 Question No. 3 NO
and you have answered
 Question No. 4 and/or
 Question No. 5 YES
then answer No. 10
10. Did either Verges Sheet Metal Works, Inc., or
King and Company or both, actually cause or
create the defect under the existing conditions?
 Verges YES _____
 King & Co. _____ NO 
The trial court awarded $40,800 against Project Square 221, Gerald Hines and Gerald Hines & Associates, and $22,440 against Verges Sheet Metal. The suit against King & Company was dismissed. Judgment was rendered in favor of USF & G and against the defendants in intervention for $36,138.54.
Project Square 221, Gerald Hines and Gerald Hines & Associates appeal arguing that the jury was factually wrong in its finding of liability and that Chatelain's assumption of the risk is a bar to his recovery. Chatelain answered and appeals asking that the judgment be reversed as to his negligence, that he did not assume the risk (which would not be a total bar), his percentage of negligence should be decreased, *181 and his damages increased. Verges Sheet Metal answered Chatelain's appeal, but later abandoned its argument. USF & G answered arguing its award should have included interest from the date of judicial demand and should not have been reduced by Chatelain's percentage of fault.

THEORIES OF RECOVERY
Chatelain argued negligence and strict liability to the jury which apparently granted recovery under both theories.
La.C.C. Art. 2315 imposes delictual liability on the party whose fault causes injury under a theory of negligence. La.C.C. Arts. 2317 and 2322 impose strict liability on the owner or custodian under certain circumstances.
To show negligence against an owner a plaintiff must prove that the thing created an unreasonable risk of injury that resulted in damage, that the owner knew or should have known of the risk, and the owner failed to either remedy the situation, render the thing safe or take steps to prevent injury. Under strict liability the plaintiff is relieved only of proving knowledge. He must still prove the thing presented an unreasonable risk of harm which resulted in the damage or that the thing was defective. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982). Obviously, the owners/operators (whose employee Levy was coordinating the work) knew or should have known that a hole was uncovered in front of the elevator shaft.
A causal relationship must exist between the harm and the negligent conduct or risk. Lear v. U.S. Fire Insurance Company, 392 So.2d 786 (La.App. 3rd Cir. 1980). The conduct or risk must be the cause in fact of the injury. One must conclude that the victim probably would not have encountered the harm but for negligence or the creation of the risk. Armand v. Louisiana Power & Light Company, 482 So.2d 802 (La.App. 4th Cir.1986), writ denied 484 So.2d 669, (La.1986). See generally McNamara, The Duties and Risks of The Duty-Risk Analysis, 44 La.L. Rev. 1227 (1984). Here the cutting of the hole and allowing it to remain uncovered was the cause in fact of Chatelain's injury.
The defendants/appellants owed a duty to protect this plaintiff and the other workers from the foreseeable risk that the hole presented. See Hill v. Lundin & Associates, 260 La. 542, 256 So.2d 620 (1972). The conclusion that the duty was owed and the the defendants/appellants breached that duty is justified by the record. Relatively simple and inexpensive measures to cover the hole or a warning of the elevator shaft immediately behind the temporary wall could have prevented the risk and the accident.
The plaintiff's injuries under a dutyrisk analysis must also fall within the scope of protection afforded by a defendants' duty. Dixie Drive-It-Yourself System v. American Beverage Company 242 La. 471, 137 So.2d 298 (La.1962). See generally, Maline, Ruminations on Dixie Drive It Yourself v. American Beverage Company, 30 La.L.Rev. 363 (1970). Chatelain's injury certainly fell within the scope of intended protection. Under these circumstances there is an ease of association between the risk presented by the defendant/appellants' conduct and the injury which ultimately occurred. See Hill v. Lundin & Associates, Inc., supra.
The defendants should be answerable in damages. We find no error in the jury's conclusions that the defendants/appellants were liable. Because negligence was supported by the record we pretermit a discussion of strict liability.

LAW ON CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF RISK
The jury's interrogatories relate to the defenses of contributory negligence and assumption of risk. Contributory negligence involves inadvertence or the unintentional failure to measure up to the proper standards of self-protection. Assumption of risk involves the conscious and deliberate decision to encounter a known risk. John Wade, The Place of Assumption of *182 Risk in the Law of Negligence, 22 LA.L. REV. 4 (1961).
Assumption of risk is a matter of knowledge of a danger and intelligent acquiescence to it while contributory negligence is a matter of some fault or departure in the standard of reasonable conduct. "The difference is frequently one between risks which were in fact known to the plaintiff or so obvious that he must be taken to have known of them, and risks which he merely might have discovered by the exercise of ordinary care." (footnotes omitted). Prosser on Torts § 55 (2d Ed. 1955). The defendant pleading either affirmative defense bears the burden of proving it. La.C.C.P. Art. 1005; Malmay v. Sizemore, 474 So.2d 1358 (La.App. 2d Cir. 1985), aff'd 493 So.2d 620 (La.1986), quoting Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La.1976).
Contributory negligence is conduct which falls below the standard to which a plaintiff should conform for his own protection. The conduct involves an undue risk of harm to the person who sustains it. Restatement of Torts 2d, § 463; Comment b to § 463 (1965) [Restatement.] An objective standard is applicable. The plaintiff is required to have the knowledge, understanding and judgment of the standard reasonable man. Restatement, § 496 A, Comment d. See also McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La.1975); Carpenter v. State Farm Fire and Casualty Company, 411 So.2d 1206 (La.App. 4th Cir. 1982), writ denied 415 So.2d 951 (La.1982).
Assumption of risk is a theory surrounded by confusion. When the plaintiff's conduct involuntarily encounters a known risk which is in itself unreasonable, that also constitutes contributory negligence. Thus, there is negligence on the part of the plaintiff and defendant. Restatement, § 496 A, Comment c4. Most assumption of risk cases involve nothing more than a particular form of victim negligenceproceeding unreasonably in the face of a known danger. Robertson, Ruminations on Comparative Fault, Duty-Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability Litigation in Louisiana, XLIV La.L.Rev. 1341, 1371 (1984).
The majority of cases involve this type of assumption of risk where the defense overlaps that of contributory negligence. When a plaintiff voluntarily takes an unreasonable chance both theories may be available.
"To assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm and must understand and appreciate the risk involved and accept it as well as the inherent possibility of danger because of the risk." (Citation omitted). Rozell v. Louisiana Animal Breeders Cooperative, Inc., 496 So.2d 275, 278 (La. 1986). See also Bourgeois v. New Orleans Public Service, Inc., 469 So.2d 1116 (La. App. 4th Cir.1985).
In Dorry v. Lafleur, 399 So.2d 559, 562 (La.1981), our Supreme Court adopted the Restatement's explanation of assumption of risk in Section 496D, Comment b, which was directly quoted in Rozell, supra, at 278:
The basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore, he will not be found, in the absence of an express agreement which is clearly so to be construed, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character and extent which make it unreasonable. Thus the condition of premises upon which he may enter may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence. (Emphasis added).
*183 Assumption of risk involves a question of fact in each case determined by an evaluation of the plaintiff's subjective knowledge. Thompson v. Tuggle, 486 So.2d 144 (La.App. 3rd Cir.1986), writ denied 489 So.2d 919 (La.1986). A subjective standard of what the particular plaintiff in fact sees, knows, understands and appreciates is applicable. Restatement, § 496D, Comment c.
Plaintiff's disclaimer of knowledge is also a fact question. There are some risks that every man must be held to appreciate, things one must have known. This cannot be equated with the imposition of an objective standard of care phrased as what one should have known. Dorry v. Lafleur, supra. See also Restatement, § 496D, Comment d.

ANALYSIS
Since our inquiry is subjective, Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), the record must be examined to determine if the plaintiff knew of the risk and appreciated its unreasonable character. Rozell, supra.
Chatelain testified he stuck his hand through the uncovered hole to check the wall and placement of studs to advise the other carpenters. Dennis Razianno, his foreman, testified that immediately after the accident Chatelain stated he had cut his hand on a stud. Razianno then informed him that the elevator shaft was behind the wall.
Although Chatelain admitted he knew an elevator shaft was somewhere behind the temporary wall, he said he did not know how far behind. Chatelain clearly stated he did not know the "silent" elevators were running. He said that during his 40 years as a carpenter he had placed his hand inside holes (where he could not see what was on the other side) every day.
Chatelain's co-worker, Doug Dossett, testified he did not know what was behind the temporary wall and said the elevators were quiet. Richard Fazio, another Selco carpenter, testified he never knew elevators were behind the wall because there was no way of knowing. The elevators could not be heard and there were no warning signs. Bernard Del Carpio, another carpenter, corroborated that the elevators could not be heard and there were no signs.
We must assume that Chatelain knew there was some risk if he placed his hand in an exposed hole. However, that was the reasonable risk he testified he took every day in his job. Without knowing about the close proximity of the elevators, he did not view it as an unreasonable risk. In Rozell, supra, the plaintiff, an experienced professional keeper, was injured when he entered a pen while a prize bull weighing 2,700 pounds was feeding. He was attempting to open a jammed gate to prevent a possible injury to the bull. The Supreme Court found he clearly recognized there was a risk, but believed it was not an unreasonable one. He had done the same thing before and had not been attacked. Since Rozell did not appreciate the risk as unreasonable, he did not assume the risk.
There is nothing in the record to indicate Chatelain knew of the danger immediately behind the temporary wall or that he appreciated it. Chatelain, a seasoned carpenter, considered the risk to be reasonable. Under these circumstances we conclude he did not assume the risk. The jury's conclusion to the contrary is clearly erroneous.
However, Chatelain's actions could constitute contributory negligence. Although he did not consciously encounter a known risk, his conduct could be viewed as falling below the standard to which a plaintiff should conform for his own protection. His behavior did involve an undue risk and the jury's conclusion that he was contributorily negligent is supported by the facts.
The jury's finding of assumption of risk and contributory negligence and then allocating fault indicates possible confusion of the two defenses. Since the interrogatories were listed so that the finding of either or both defenses precluded the determination of percentages of fault, it was certainly plausible for the jurors to consider that the same conduct was subject to both defenses.
*184 Although the interrogatories did not indicate that finding assumption of risk would end the inquiry, the jury instructions did state that such a finding would bar recovery. That probably added to the confusion.
The interrogatories reveal that the jury intended to decrease Chatelain's award because of his faulty conduct. The finding of assumption of risk was clearly wrong; however, the subsequent allocation of fault shows the jury correctly found Chatelain contributorily negligent and reduced his award accordingly. Finding the defendants/appellants liable and Chatelain contributorily negligent is supported by the record.

CHATELAIN'S CLAIMS
Chatelain argues contributory or comparative negligence is not applicable in this strict liability case. After Bell v. Jet Wheel Blast, Division of Erwin Industries, 462 So.2d 166 (La.1985), a case by case approach is authorized. The reasons for not applying contributory negligence in Bell (a products liability case) are certainly not present here. Additionally, the jury rendered judgment in this case on both strict liability and negligence theories. Therefore, Chatelain's contributory negligence was correctly utilized to reduce his award.
Chatelain also argues his 38% percentage of negligence is clearly erroneous. Apportionment of fault is a question of fact. Efferson v. State through DOTD, 463 So.2d 1342 (La.App. 1st Cir. 1984), writs denied 465 So.2d 722 (La.1985). In Watson v. State Farm Fire and Casualty Company, 469 So.2d 967 (La.1985), the Supreme Court offered guidelines for apportioning fault and noted Section 2(b) of the Uniform Comparative Fault Act which provides that the trier of fact consider both the nature of the conduct of each party at fault and the causal relationship between the conduct and the damages claimed. Under these circumstances we cannot conclude the apportionment was clearly wrong.
Chatelain also argues that his award should be increased. The trial court has much discretion in making damage awards.
An appellate court must not disturb the assessment of damages unless the record clearly demonstrates an abuse of that discretion. La.C.C. Art. 1934(3) (pre-1985); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
The jury listened to medical testimony by Dr. Elliott Black and economic testimony by Dr. Melville Wolfson. Chatelain was age 63 when he was disabled and could no longer work as a carpenter. The award was $102,000 which is supported by the evidence. We find no abuse of discretion.

USF & G'S INTERVENTION
USF & G argues its award should not have been reduced by Chatelain's percentage of fault. USF & G contends that it should receive more recovery than Chatelain, the injured employee, since his award was reduced proportionately according to his fault. USF & G relies primarily upon the 1985 amendment to La.R.S. 23:1101. La. Acts 1985, No. 931, § 1, added a sentence in subsection b which states:
The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependants against the third person and, where the recovery of the employee is decreased as a result of comparative negligence, the recovery of a person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage.
USF & G contends the amendment is a substantive change and cannot be applied retroactively. The compensation carrier urges that its recovery cannot be reduced by Chatelain's 38% of fault. We disagree.
Historically La.R.S. 23:1101 has provided that the employer or his workmen's compensation carrier could be reimbursed for money expended in benefits up to the amount the employee received in his tort suit. The original act which was the predecessor to La.R.S. 23:1101, 1914 La. Acts, No. 20, § 7 stated an employer's claim for reimbursement in terms of subrogation to the rights of the injured employee. By *185 1920 the subrogation language had been deleted and the statute provided:
That when an injury for which compensation is payable under this Act shall have been sustained under circumstances creating in some other person (in this Section referred to as third person) than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Act; and the payment or award of compensation hereunder shall not affect the claim or right of action of such injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for such injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for such injury.
Any employer having paid or having become obligated to pay compensation under the provisions of this Act may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent....
1976 La. Acts, No. 147 § 2 made minor changes to La.R.S. 23:1101:
When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as third person) other than those persons against whom the said employee's rights and remedies are limited in section 1032 of this Chapter, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to such employee or his dependents.
The intent was always that the employer/insurer receive back the amount paid out in compensation up to the amount the employee received as an award in his tort suit. Under La.R.S. 23:1103 the compensation carrier's claim for reimbursement took precedence over that of the injured employee. "[I]f the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor...." The insurer's recovery was always limited to that of the injured employee, to the amount of the tort judgment in the employee's favor. Landaiche v. Lou-Con, 461 So.2d 1107 (La. App. 5th Cir.1984). See also Malone & Johnson, 14 Civil Law Treatise: Workmen's Compensation, § 370 (2d ed. 1980) [Malone & Johnson].
Since 1920 La.R.S. 23:1101 has allowed an employer/insurer to bring suit against a third person when circumstances created in that person "a legal liability to pay damages...."to the injured employee. Historically the employer or insurer has not been entitled to reimbursement for compensation benefits against a third party tortfeasor when the injured employee could not recover. Prior to 1979 La. Acts, No. 431 and the advent of comparative negligence, the employee and therefore the employer/insurer could not recover when the employee was contributorily negligent. Lalande v. Index Geophysical Survey Corporation, 336 So.2d 1054 (La.App. 3rd Cir. 1976); Tri-State Insurance Company v. Tidewater Trailer Mfg. Company, 312 So.2d 353 (La.App. 2d Cir. 1975). See also Malone & Johnson, at § 371. The rights of an employer to recover compensation benefits paid to an injured employee were contingent on the employee's right to recover *186 from the third party. Lalande v. Index Geophysical Survey Corporation, supra; Bell v. Carolina Casualty Insurance Company, 227 So.2d 171 (La.App. 2d Cir.1969), writ refused 255 La. 151, 229 So.2d 733 (La.1970).
The insertion of comparative negligence in 1979 into the scheme changed only the employee's right to recover against the tortfeasor. The negligent employee could still recover, but his award was reduced by the percentage of his fault. The rights of a compensation carrier seeking reimbursement did not change. The insurer could recover from a third party when circumstances created in that party "a legal liability to pay damages." The liability to pay was then possible even when the injured employee was negligent if he was not 100% negligent. Under La.R.S. 23:1103 the insurer's claim took precedence and the compensation carrier was entitled to reimbursement from the employee/insurer's award up to the total amount of that award and not beyond. The employer's reimbursement claim was therefore reduced by the percentage of the employee's fault.[2]
In situations where the employee is negligent, the amount the compensation carrier can recover is and always has been dependent on the amount the injured employee can recover. Under contributory negligence the compensation carrier recovered either all or none of the benefits paid depending entirely on the employee's conduct. Under comparative negligence the compensation carrier's right to reimbursement is still dependent on the injured employee's conduct.
The 1985 amendment to La.R.S. 23:1101 (which inserted subsection designations, made two minor changes and added the second sentence to subsection B) simply recognizes this change in the employee's rights and restates the pre-existing rule that the compensation carrier can only recover to the extent the injured employee can recover. This is not a substantive change in the compensation carrier's rights. USF & G's arguments relating to the amendment and the reduction of its award have no merit.
USF & G also argues its award should have included its continuing payments and interest from the date of judicial demand. Under La.R.S. 23:1101 the compensation carrier which paid benefits and medical expenses has the right to recover those amounts from a third party tortfeasor. The carrier is entitled to reimbursement for compensation benefits paid prior to suit and subsequently, even after trial pending appeal until the judgment is final. Willis v. Stauffer Chemical Company, 349 So.2d 1390 (La.App. 3rd Cir. 1977) (on rehearing), writ denied 352 So.2d 1047 (La.1977); Hall v. Hartford Accident and Indemnity Company, 278 So.2d 795 (La.App. 4th Cir. 1973), writ denied 281 So.2d 753 (La.1973). See also Malone & Johnson, at § 370.
The intervening compensation carrier is entitled to legal interest from the date of judicial demand or intervention. Lachney v. Motor Parts and Bearing Supply, Inc., 357 So.2d 1277 (La.App. 3rd Cir. 1978); Willis v. Stauffer Chemical Company, supra. See also Malone & Johnson at § 370. The insurer is also entitled to legal interest on the amount of each payment made after judicial demand commencing from the date each payment was made until the judgment is paid. Larson v. Huskey, 440 So.2d 769 (La.App. 4th Cir.1983). The judgment should have reflected this.
USF & G also notes that the recov ery of a compensation carrier should be paid in preference and priority to that of the plaintiff. La.R.S. 23:1103 states that "such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent...." Judgments routinely declare the insurer's recovery be paid by preference out of the sums awarded to plaintiff. See Willis v. Stauffer *187 Chemical Company, supra. The judgment against the liable defendants and Chatelain is for their respective percentages and must be amended.

DECREE
That portion of the judgment relating to the intervention is amended to decree: that USF & G, intervenor, be paid by preference out of sums awarded to the plaintiff, Jacob Chatelain; the amount of compensation benefits paid prior to the date of intervention bear legal interest from that date; the amounts USF & G paid or will pay from the date of intervention until judgment becomes final shall bear legal interest on the amount of each payment from the date the payment was or will be made.
In all other respects the judgment is affirmed.
AMENDED.
BYRNES, J., concurs.
LOBRANO, J., dissents.
BYRNES, Judge, concurring.
I concur in the result reached but for reasons which differ from those of the author of the opinion.
In my opinion the plaintiff in this case assumed the risk which injured him. However, assumption of risk is a concept which is difficult if not impossible to distinguish from contributory negligence in the majority of cases. This is such a case.
As Prosser points out in his treatise on torts:
The plaintiff's conduct in encountering a known risk may be in itself unreasonable, because the danger is out of all proportion to the advantage which he is seeking to obtain ... If that is the case, his conduct is a form of contributory negligence, in which the negligence consists in making the wrong choice and voluntarily encountering a known unreasonable risk. In such cases it is clear that the defenses of assumption of risk and contributory negligence overlap, and are as intersecting circles, with a considerable area in common, where neither excludes the possibility of the other. (emphasis added) Prosser, Law of Torts (4th ed. 1971) Sec. 68
This case is a prime example of the overlap between assumption of risk and contributory negligence. Chatelain made the wrong choice and voluntarily encountered a known risk which a reasonable man should have avoided. The danger of placing his hand inside the temporary wall when he knew that elevators ran behind it was out of proportion to the advantage he sought to obtain. This to me is negligence. It may also be characterized as assumption of risk, but in this situation that appears to be a distinction without a difference. I have no difficulty interpreting C.C. Art. 2323 to include situations like this where assumption of risk and contributory negligence are merely different ways of expressing the same conclusion concerning a plaintiff's conduct.
It simply is not reasonable to assume that in enacting C.C. Art. 2323 the legislature intended to allow partial recovery to a plaintiff who is so negligent that he does not discover his peril at all, but deny recovery altogether to a plaintiff who has at least exercised due care to discover the peril but has unreasonably chosen to encounter that peril once it is known to him. I would therefore find that C.C. Art. 2323 applies at least to those instances of assumption of risk which could also be classified as contributory negligence.
The result reached by the jury in this case appears to be consistent with this view. In response to interrogatories the jury found that the plaintiff assumed the risk of his injury and was negligent. Although at first blush these findings may appear contradictory, in reality they simply recognize the overlap between the two theories.
My review of the record convinces me that the jury's allocation of fault among the parties was not clearly wrong and for this reason I concur in the author's ultimate affirmance of those findings, albeit on different grounds.
*188 LOBRANO, Judge, dissenting.
I respectfully dissent for the following reasons.
The primary issue presented in this case is whether a finding that plaintiff assumed the risk of his injury is a complete bar to his recovery where defendants have been found responsible on negligence grounds and strict liability grounds.
This matter was tried by a jury. The interrogatories submitted, and the jury's responses thereto are as follows:
1. Do you find that the wall in question, as it existed
 on the 17th floor of One Shell Square on March 26,
 1982, was defective under the existing conditions?
 Yes X No _____
2. Did the owners, Project Square 221, Gerald Hines,
 Gerald Hines and Associates, have care, custody
 and control of the wall in question on March 26,
 1982?
 Yes X No _____
3. Do you find that the owners of the building, Project
 Square 221, Gerald Hines, Gerald Hines and Associates,
 were negligent, which negligence was a proximate
 cause of the injury?
 Yes X No _____
4. Do you find that Verges Sheet Metal Works, Inc.,
 was negligent, which negligence was a proximate
 cause of the injury?
 Yes X No _____
5. Do you find that King and Company was negligent,
 which negligence was a proximate cause of the
 injury?
 Yes ______ No X 
6. Do you find that the plaintiff, Jacob Chatelain,
 assumed the risk of his injury?
 Yes X No _____
7. Do you find that the plaintiff, Jacob Chatelain, was
 negligent, which negligence was a proximate cause
 of the injury?
 Yes X No _____
8. If you have found that the owners of the building to
 have the care, custody and control of the wall in
 question, and have found that the wall in question
 was defective, and/or if you have found any of the
 following parties negligent then express in terms of
 percentage the fault or negligence attributable to
 each party:
 (a) Project Square 221
 Gerald Hines
 Gerald Hines and Associates 40 %
 (b) Verges Sheel Metal Works, Inc. 22 %
 (c) King and Company 0 %
 (d) Jacob J. Chatelain 38 %
 100 %
9. What amount of money will fairly and adequately
 compensate the plaintiff, Jacob Chatelain
 for the damages he suffered as a result of
 the injury?
 $102,000.00 
This action is a result of personal injuries sustained by plaintiff, Jacob Chatelain, while working as a carpenter for Selco Construction Company in One Shell Square, a high rise office building in downtown New Orleans. The defendants are the owners of the building (Project Square 221, Project Corporation), its operator (Gerald D. Hines, and Gerald D. Hines and Associates), and their insurer. Also named defendants were Verges Sheet Metal Works, Inc. (the air conditioning contractor) and King and Company (framing and dry wall contractor).
When One Shell Square was built, the 17th floor was unfinished. The mid-rise bank of elevators servicing the upper floors were sealed with gypsum board (a temporary wall) and did not stop at the 17th floor. Sometime prior to the accident date, Shell Oil Company (tenant) decided to lease the 17th floor, and various renovation work began. King and Company was retained to perform dry wall and other carpentry work, Verges Sheet Metal was retained to install and re-route the air conditioning ducts and Selco was retained to do various carpentry work, including the installation of new elevator doors, and building a permanent wall around the elevator shaft. This would permit tenant access to the mid-rise elevators.
In order to reroute an air-conditioning duct because of problems with an electrical fixture, a hole was cut in the temporary wall enclosing the elevator shaft by a King and Company employee.[1] The hole was estimated to be anywhere from 10 to 12 feet above the floor, was approximately 6 to 7" square, and was left uncovered.
Plaintiff was a carpenter employed by Selco with approximately forty years experience. *189 He was 63 years old at the time of his accident. As previously stated Selco was retained to do certain carpentry work including the placement of new elevator doors, as well as the demolition of the temporary wall. On March 26, 1983, plaintiff and a co-worker, Mr. Dossett were hanging doors on the 38th floor. During the lunch break, plaintiff's supervisor, Mr. Razianno, told plaintiff and Dossett to proceed to the 17th floor where they were to construct temporary barricades in the elevator lobby. Razianno testified that this would prevent persons from wandering in the elevator corridors after the temporary walls were demolished.
Plaintiff, Razianno and Dossett travelled to the 17th floor by way of the freight elevator. When they reached the area to be barricaded, Razianno realized he left the keys to his tool box on the 38th floor. He instructed plaintiff and Dossett to start the preparatory work such as "popping lines", and that he would return shortly. While awaiting Razianno's return, plaintiff decided he would check the location of the studs, and composition of the temporary wall. He knew later that evening another Selco crew would be demolishing the wall, and thought it would be helpful to advise the younger carpenters. Plaintiff admits he was not required to do this, nor was he told to do this, nor was he to be part of the demolishing crew. He found a ladder, climbed to the existing duct hole and placed his hand inside to feel the studs. As he was removing his hand from the hole, an elevator passed and practically severed his right hand at the wrist.

ASSUMPTION OF THE RISK
"To assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm and must understand and appreciate the risk involved and accept it as well as the inherent possibility of danger because of the risk." Rozell v. Louisiana Animal Breeders Cooperative, Inc., 496 So.2d 275 at 278 (La.Sup.Ct.1986) citing Lytell v. Hushfield, 408 So.2d 1344 (La. 1982). Comment (b) to Section 496D of the Restatement, Torts, cited in Rozell, supra and Dorry v. Lafleur, 399 So.2d 559 (La. 1981), explains assumption of the risk as follows:
"The basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore, he will not be found, in the absence of an express agreement which is clearly so to be construed, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character and extent which make it unreasonable. Thus the condition of premises upon which he may enter may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence."
Thus inquiry of whether a plaintiff has assumed the risk is subjective. Langlois v. Allied Chemical Corp., 249 So.2d 133 (La. 1971). This subjective standard has been held to encompass only a plaintiff's actual knowledge of a risk, and not his imputed knowledge. Dorry v. LaFleur, supra. It is not a question of what a plaintiff should have known, but what a plaintiff must have known. The doctrine presupposes that the plaintiff had knowledge of the danger, that he understood and appreciated the risks involved, and that he voluntarily exposed himself to such a risk. Dorry, supra.[2] It obviously differs from the defense of contributory negligence in that it requires more than a breach of what a reasonable plaintiff should have done under the circumstances.
*190 Applying these legal principles to the evidence presented in this case, I cannot say that the jury was clearly wrong or manifestly erroneous in concluding that plaintiff assumed the risk of his injuries. Plaintiff knew that elevator shafts were behind the temporary walls. He knew that the reason for constructing the barricades in the elevator corridor on the 17th floor was to protect the area since the elevator shafts would be exposed once the temporary walls were demolished. He acknowledged that he had been employed as a carpenter in the original construction of the building and had worked on enclosing the elevator shafts, although not the temporary enclosures on the 17th floor. His primary factual defense of his actions was that he wasn't aware of the actual distance from the temporary wall to the elevator. I quote the pertinent portions of his testimony:
Q. Mr. Chatelain, did you know that was an elevator shaft?
A. I knew there was an elevator shaft back there but that was a temporary wall, that elevator could have been two or three foot behind this temporary wall, it could have been anywhere this temporary wall."
* * * * * *
Plaintiff further testified, however, that from his experience in the original construction of the elevator enclosures, he was aware the elevators ran two to two and one-half inches behind the permanent walls.
I find no error in the jury's conclusion that plaintiff's actions were voluntary, and that he knew of the risks involved. When evaluating assumption of the risk "... plaintiff's disclaimer of knowledge or appreciation must be taken at face value. This is a fact question. And there are some risks that every man must be held to appreciate...." Dorry, supra at 563 (emphasis added). There is no manifest error in the jury's findings.
Having so concluded, I now consider the issue of whether assumption of the risk has been abolished by the adoption of comparative negligence.
Act 431 of 1979 amended Civil Code Article 2323 which now provides:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
It has been stated that the adoption of comparative negligence was designed to counter the inequities of an all or nothing tort doctrine. See, Turner v. New Orleans Public Service, Inc., 476 So.2d 800 (La. 1985); Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985). However, as Chief Justice Dixon so aptly stated in Turner, supra the statute left many unanswered questions.[3] In deciding whether the "Baumgartner"[4] rule still applies in the pedestrian vehicle situation, the Court, in Turner, attempted to decipher the legislative intent behind the statute. Their conclusion is as follows:
"Legislative intent, frequently employed by courts in statutory interpretation, is so obscure and uncertain as to C.C. 2323 that caution should be employed in attributing any intention to the legislature not expressed in the statute. There is no doubt, however, that contributory negligence, `as a complete bar to recovery, was eliminated and that comparative fault may be applied in certain categories of cases to reduce plaintiff's recovery.'" Turner, supra, at 804.
Plaintiff argues that the following language in Bell v. Jet Wheel Blast, 462 So.2d *191 166 (La.1985), is indicative of legislative intent to "do away" with the all or nothing tort doctrine inequity.
"Furthermore, the adoption of a system of comparative fault should, where it applies, entail the merger of the defenses of misuse and assumption of the risk into the general scheme of assessment of liability in proportion to fault." Id., at 172.
I limit my interpretation of Jet Wheel to the particular facts certified to the Court from the Fifth U.S. Circuit Court of Appeals, and consider the above quoted language as dicta. However, my brethren of the First Circuit in Aguillard v. Langlois, 471 So.2d 1011 (La.App. 1st Cir.1985), writ denied 476 So.2d 356 (1985) relying on that language, held that even though the plaintiff had assumed the risk, his fault should be determined on a comparative basis, rather than serve as a complete bar to his claim. The Fifth Circuit, on the other hand, without mentioning Jet Wheel Blast, held that the plaintiff's decedent, being unable to swim, assumed the risk of wandering into the deep part of the innkeeper's pool, and thus was barred from recovering. Brown v. Harlan, 468 So.2d 723 (La.App. 5th Cir.1985), writs dismissed, 472 So.2d 26 (1985).
A reading of the jurisprudence through Rozell, supra, does not give a definite answer to the question posed. A reading of the statute, and a comparison of the legal differences between assumption of the risk and contributory negligence convince me, however, that Article 2323 did not abolish the defense of assumption of the risk. Despite the dicta suggestion in Jet Wheel Blast that assumption of the risk should be "merged" into a comparative fault finding, that is not what Article 2323 says. Clearly that article states, in the first sentence, that "[w]hen contributory negligence is applicable..." then comparative negligence applies. It doesn't suggest when any defense is available, then comparative negligence is to take its place. The dicta of Jet Wheel Blast suggests a result contemplated by the Uniform Comparative Fault Act which deals "... with the effect of plaintiff's contributory fault, and included the defense of `assumption of the risk' and `misuse of product.'" Turner, supra, at 803, 804. However, the legislature did not say "plaintiff's contributing fault", it said "as the result partly of his own negligence." "Fault and negligence might have been used interchangeably by the legislature, but probably were not. It is common knowledge in the legal profession that fault includes more than negligence." Turner, supra at 803.
I deem the legislature's choice of words significant. It clearly suggests that, irrespective of the basis for defendant's culpability, a plaintiff's claim will be proportionately reduced only when his culpability is based on negligence.
I would not interpret Article 2323 to mean anything other than what it clearly states. If the legislature had intended comparative "fault" rather than comparative "negligence" to apply it would have said so. It did not. I therefore conclude that assumption of the risk is still a valid defense.

ASSUMPTION OF RISK AS A BAR TO STRICT LIABILITY
In addition to finding defendants guilty of negligence, the jury also found them liable under Articles 2322[5] and 2317.[6] Defendants' fault under these articles is based, not on a breach of duty, i.e. negligence, but on custody and ownership. The legal fault arising from these codal provisions is referred to as strict liability. Under Article 2322, a plaintiff need only prove that the building or its appurtenances posed an unreasonable risk of harm, and that damage occurred as a result of this risk. Entrevia v. Hood, 427 So.2d 1146 *192 (La.1983). Under Article 2317, a plaintiff need only prove the existence of defect or vice (i.e. unreasonable risk of harm) in a person or thing which one has legal supervision for, or custody of, and that the defect causes damage. Loescher v. Parr, 324 So.2d 441 (La.1976). One of the defenses to a strict liability finding, however, is victim fault. Entrevia, supra.
Victim fault means the conduct of the victim was a substantial factor in causing his injury. Ruffo v. Schwegmann Brothers Giant Supermarkets, Inc., 424 So.2d 470 (La.App. 5th Cir.1982). Victim fault must rise to the level of causing the accident before it will bar recovery. Rozell v. Louisiana Animal Breeders, supra. Assumption of the risk has been equated with victim fault. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971); LaJaunie v. Metro Property & Liability Ins., 481 So.2d 1357 (La.App. 1st Cir.1985). "Defendant is exculpated from fault and liability by the fault of the victim, that is, her assumption of the risk." Daniel v. Cambridge Mut. Fire Ins. Co., 368 So.2d 810 (La.App. 2nd Cir.1979).
Numerous cases, although finding as a fact that plaintiff had not assumed the risk, have suggested that it is a proper defense in strict liability cases.[7] As previously stated, the Fifth Circuit, in Brown v. Harlan, supra held that plaintiff's decedent did assume the risk and thus was barred from recovery on a strict liability basis against an innkeeper. Contra, Aguillard v. Langlois, supra.
I am satisfied that the defense of assumption of the risk encompasses victim fault and is therefore a proper defense to a claim based on Civil Code Articles 2322 and 2317. Since I have concluded that the jury was not manifestly erroneous in finding that plaintiff had assumed the risk of his injury, I would hold that his actions also constitute victim fault, and is a proper defense to his claim. I would therefore reverse the judgment below.
NOTES
[1] Although there was testimony the hole was made by a King & Company employee to accommodate Verges in the air conditioning work, there is some discrepancy and argument as to whether that hole was involved in plaintiff's accident. There was also testimony that a Verges' employee created the hole when he moved an air conditioning duct. It is not clear whether that was the same hole. The jury found King & Company not negligent, but found Verges created the defect and was negligent. Neither defendant appealed. Although Verges answered Chatelain's appeal, its brief abandons that answer and asks that the judgment be affirmed.
[2] According to Malone & Johnson at § 371 fn. 34a (Supp.1986), this reduction of the employer's reimbursement claim by the employee's percentage of fault appears to be the result in France under a comparative negligence system. It is the only equitable result.
[1] There is some discrepancy, and argument by King and Company that the hole cut by their employee was not the hole involved in plaintiff's accident. However, for purposes of this factual discussion, I do not believe that issue is pertinent.
[2] The Court in Dorry explained the misuse of the phrase "should have known" which was applied in Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La.1976). That phrase is the objective standard used in determining negligence, and does not meet the criteria of actual knowledge required for assumption of the risk.
[3] Among those unanswered questions posed in Turner, was: "Are we to believe that a policy permitting all or nothing recovery was intended to be retained in cases which a defendant, guilty of fault, raises the defense of assumption of the risk?"
[4] Baumgartner v. State Farm Mutual Automobile Ins. Co., 356 So.2d 400 (La.1978).
[5] Article 2322 provides:

"The owner of a building is answerable for the damages occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
[6] Articles 2317 provides, in part:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
[7] Rozell v. La. Animal Breeders Cooperative, Inc., supra; Dorry v. LaFleur, supra; Langlois v. Allied Chemical Corporation, 249 So.2d 133 (La. 1971); LaJaunie v. Metro Property & Liability Ins., supra; Blakeney v. Tidewater Compression Service, 463 So.2d 914 (La.App. 2nd Cir.1985), writs denied.