496 So.2d 275 (1986)
Edward R. ROZELL
v.
LOUISIANA ANIMAL BREEDERS COOPERATIVE, INC. et al.
No. 86-C-0769.
Supreme Court of Louisiana.
October 20, 1986.
Rehearing Denied November 13, 1986.
*276 R. Bruce Macmurdo, Steffes & Macmurdo, Baton Rouge, for applicant.
Henry Salassi, Jr., Salassi & Clark, James Moore, Franklin, Moore & Walsh, Mary Thompson, Watson, Blanche, Wilson & Posner, Baton Rouge, for respondents.
DIXON, Chief Justice[*]
Edward R. Rozell, an employee of the Louisiana State University Dairy Improvement Center, filed suit against Louisiana Animal Breeders Cooperative, Inc. and Atlantic Breeders Cooperative, Inc. seeking to recover damages suffered when he was attacked by a bull owned by defendants.[1] L.S.U.'s worker compensation carrier, Continental Insurance Company, intervened seeking reimbursement of compensation benefits paid to plaintiff. Atlantic Breeders Cooperative, Inc. filed a third party demand against Louisiana State University, seeking indemnification if Atlantic was held liable. Defendants filed motions for summary judgment seeking dismissal on the grounds that the bull which injured Rozell, named Dixie Lee Fashion Designer, was not under the care, custody or control of the defendant owners at the time of injury. This court ruled that under C.C. 2321 defendants could be held responsible because ownership alone is the basis of liability, regardless of whether owners also had custody. Rozell v. Louisiana Animal Breeders Cooperative, Inc., 434 So.2d 404 (La.1983). After remand, the trial court found plaintiff contributorily negligent, and equated this to a finding of victim fault, thus barring his recovery. Accordingly, plaintiff's suit was dismissed, as well as Continental's third party intervention and Atlantic's third party demand. The court of appeal affirmed, but held plaintiff assumed the risk and also noted that the liability of the owner of a bull is strict rather than absolute because cattle, including bulls, belong to the class of domesticated animals having through long association with man become subject to man's use and control. Rozell v. Louisiana Animal Breeders Cooperative, Inc., 486 So.2d 968, 972 (La.App. 1st Cir.1986). Plaintiff applied for writs, arguing that the lower courts erred in finding him contributorily negligent or that he assumed the risk, and that because a bull is a noxious, inherently dangerous animal, owner liability under C.C. 2321 is absolute rather than strict.

FACTS
Dixie Lee Fashion Designer was housed at the L.S.U. Dairy Improvement Center for semen collection and distribution as part of the state's dairy sampling program to promote breeding. Dr. Arnold Baham is manager of Louisiana Animal Breeders Cooperative and also head of the Dairy Improvement Center. He testified in deposition that the artificial insemination done at the Dairy Improvement Center is for the benefit of farmers' livestock. Operations are financed primarily by the state legislature and services are provided at minimum expense. Income generated by the sale of the semen goes to the particular bull's owners.
Dixie Lee was housed in a barn which the trial court described in its findings of *277 fact, which were adopted by the court of appeal. 486 So.2d 968, 969-70.
On the morning of the accident, Edward Rozell was working alone contrary to usual authorized procedure because the Dairy Improvement Center was short one employee. His job responsibilities included feeding the bulls and maintaining their housing. Rozell poured feed into Dixie Lee's trough and as the bull lowered his head to eat, Rozell noticed the gate to the pasture was jammed closed, thus preventing access to the outside. He was immediately concerned because bulls were in the habit of going out to pasture as soon as they finished eating, and Dixie Lee might butt the gate and injure his eye on the protruding gate latch if his access to the pasture was blocked. Rozell evaluated the situation. Knowing that bulls rarely allow anything to disturb them once engrossed in feeding, and seeing Dixie Lee's eye level was below the wall of the trough, Rozell began to take the three steps out of the "safe space" to the gate. The next thing he remembered was lying on the floor; the bull had evidently raised his head, backed out of the stall and around the pipes, turned around, approached and placed his forehead in the middle of Rozell's chest. The weight of the 2700 pound bull crushed his sternum, and corrective surgery was eventually required. After a few months Rozell resigned his job because he could not perform the required tasks due to the chest injury and pain.
Rozell was trained for his position through practical experience. There were no written rules or procedures, and Rozell testified that he understood that when there was a job to be done, he had to do it. The director of the dairy center testified that employees were not supposed to enter the pens while a bull was unrestrained and that bulls were not supposed to be worked by a lone employee. The testimony of two witnesses with regular experience working with bulls was that they had on occasion been required to enter a pen alone with an unrestrained bull in order to do their jobs.

BASIS FOR LIABILITY
Rozell sued, alleging liability under C.C. 2321 which provides in pertinent part that the "owner of an animal is answerable for the damage he has caused; ..." The correct interpretation of this article was outlined by this court in Holland v. Buckley, 305 So.2d 113, 119 (La.1974):
"... When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event." (Footnote omitted).
Holland is applicable to the case at bar because bulls belong to the class of domesticated animals, and because liability of the owner of such a domesticated animal is strict rather than absolute. Rozell v. Louisiana Animal Breeders Cooperative, Inc., 486 So.2d at 971-72. The Holland court also stated that the underlying reason for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk creator should bear the loss. "He maintains the animal for his own use or pleasure." 305 So.2d at 119.
Under C.C. 2321 the animal's master has an obligation to keep his animal under such "garde" that it does no damage to others. This obligation continues even if the owner places his animal in the custody of another. In Holland the injuring animal was in custody of its owner, unlike the instant case. In Rozell this court found that there was no statutory basis for grafting the custodial requirement of C.C. 2317 onto C.C. 2321. C.C. 2321 would merely be repetitive of C.C. 2317 if custody was required for liability, and C.C. 2321 would be superfluous, contrary to the efficiency of the codal scheme. The owner who continues to be liable for damage caused by his *278 animal might be entitled to indemnity from its actual custodian. Rozell v. Louisiana Animal Breeders Cooperative, Inc., 434 So.2d at 408.
Loescher v. Parr, 324 So.2d 441, 444 (La.1975) found liable the owner of a tree that fell because it "constituted an unreasonable hazard of injury to those upon whom it might foreseeably fall." The "likelihood and gravity of harm" of the escalator in Hunt v. City Stores, Inc., 387 So.2d 585, 589 (La.1980), rendered the escalator unreasonably dangerous to children wearing soft rubber soled shoes. The defective concrete back steps in Entrevia v. Hood, 427 So.2d 1146, 1150 (La.1983), might have an unreasonable risk of harm to a lawful occupant of the vacant, isolated house in the country, but not to the plaintiff, who was in contact with the step because of her "legally and morally reprehensible conduct."
Here, the 2700 pound bull was explosively dangerous, and constituted an unreasonable hazard of injury, even to the man hired to attend him.

DEFENSES
The court of appeal found that Rozell assumed the risk of injury when he "left a position of complete safety outside the pen and entered the pen where he was attacked." 486 So.2d at 972. Because plaintiff was aware of the unpredictable nature of bulls and aware of possible danger, yet chose to enter the pen alone on this occasion, the court of appeal concluded that he assumed the risk. "Assumption of risk" is a doctrine not well developed in Louisiana. We disagree with the interpretation of that doctrine by the court of appeal.
To assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm and must understand and appreciate the risk involved and accept it as well as the inherent possibility of danger because of the risk. Lytell v. Hushfield, 408 So.2d 1344 (La.1982). The opinion in Dorry v. Lafleur, 399 So.2d 559, 562 (La. 1981) adopted the expression of assumption of the risk contained in the Restatement, Second, Torts, Section 496 D:
"`Except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character.
Comment b explains:
The basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore, he will not be found, in the absence of an express agreement which is clearly so to be construed, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character and extent which make it unreasonable. Thus the condition of premises upon which he may enter may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.'" (Emphasis added).
The determination of whether a plaintiff assumed a risk is made by subjective inquiry. Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971). Thus, it is appropriate to examine the record to determine if the plaintiff appreciated the unreasonable character of the risk. Rozell clearly recognized that there was risk in entering the bull pen, but he strongly believed that it was not an unreasonable risk. He was a professional keeper, and said "... I thought I had sufficient safety with him engrossed in eating to grab that gate and pull it back into the building." And "I felt what I was doing at the time I was safe in doing or I wouldn't have done it." He also stated:

*279 "Doing the same thing prior to that time, I've never been attacked. With the bull in the situation with his head in the feed trough and his eyes below the level of concrete where he could not see me, I had reason to believe through prior experience that I could get that gate dislodged."
And lastly, "I didn't think there was a risk when I did it. I felt I had that bull in a position to where I could do the job that I had to do without any danger to myself ... I considered doing what I had to do safe. I had sufficient time to do it."` The trial judge, while ruling against Rozell, evidently agreed with his assessment that there was relatively little chance that the bull could move out from the feed stall and around the stall's pipes in the short period of time plaintiff would need to get the gate unjammed. The trial judge observed:
"Now what's amazing to me and I'll never know the answer[,] is, (sic) considering that there is ten or eleven feet from the end of the slide wall space over to the gate, to traverse that distance and to start that traversing with the bull in his feed, I don't see how the bull got his head out of the trough, came out behind the pipes and came around, traversed the area, and caught the person who would, I assume, be making a hasty trip over to the gate."
The court of appeal failed to address the critical issue of whether Rozell appreciated the risk he took was unreasonable. Not only did Rozell consider the risk a reasonable one, an objective evaluation would classify his chance of being attacked in this situation as remote. Rozell did not assume this risk.
Until Louisiana adopted the doctrine of comparative negligence, when the defendant proved that plaintiff's slightest negligence contributed to the accident causing the injury, there could be no recovery. Nothing in the code, statutes or known jurisprudence requires the application of such a doctrine under C.C. 2321 (or C.C. 2317).
Assumption of risk and contributory negligence are common law defenses to negligence actions. C.C. 2317 and C.C. 2321 are based on neither negligence nor fault, but the obligations arising from custody and ownership. The defenses to such cases are: (1) fault of the victim; (2) fault of a third person; (3) irresistible force. Each is a causation defense, and differs from negligence of the injured person.
Victim fault was recognized as a defense to a C.C. 2321 strict liability action in Holland v. Buckley, supra at 117-18. The court in Holland cited Planiol's summary of judicial interpretation of the French Civil Code equivalent of C.C. 2321: "`... the person responsible for the damage avoids liability by proving that the accident was due to a fault of the victim, or to a fortuitous event.' Planiol, Civil Law Treatise, Volume 2, Part 1, No. 920 (p. 517) (LSLI translation, 1959)." "Fault of the victim ... means the conduct of the victim was a substantial factor in causing the injury complained of." Ruffo v. Schwegmann Brothers Giant Supermarkets, Inc., 424 So.2d 470, 473 (La.App. 5th Cir. 1982), citing Sumner v. Foremost Insurance Co., 417 So.2d 1327 (La.App. 3rd Cir.1982).Rozell did nothing to cause the bull to attack him. Victim fault must rise to the level of causing the accident before it will bar recovery.[2] Otherwise, the doctrine *280 of strict liability would have no utility. The liability would not be "strict." Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985). C.C. 2315, interpreted as it was until recently as liability for negligence, rounded out with common law defenses which were thought to apply to all personal injury cases, left no room for the use of C.C. 2317 and C.C. 2321. Lack of use led to atrophy of the strict liability doctrines, while they flourished in other states.
On the other hand, the use of the strict liability doctrines leaves no room for contributory negligence as we have known it. Victim fault, to be a defense, must be at least a substantial cause.[3]
The judgment of the courts below are reversed at respondents' cost, and the case is remanded to the court of appeal for further proceedings consistent with this opinion.
DENNIS, J., concurs and will assign reasons.
MARCUS and LEMMON, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
In this pre-comparative fault case, I consider plaintiff's fault was clearly a cause of his injury, that is, there was victim fault; therefore, the courts below correctly denied recovery.[1] Accordingly, I respectfully dissent.
LEMMON, Justice, dissenting.
Even under the majority's interpretation of the victim fault defense, plaintiff's fault in turning his back on the bull while traversing the ten-foot (three-step) distance between the slide space and the gate caused this accident (in the sense of the duty-risk analysis that keeping his eyes on the bull would have prevented the accident). Another cause of the accident was the victim's fault in failing to use the safer procedure of reaching through the window opening (which does not require entry into the bull pen) and pulling the gate open. The trial court's factual determination that this victim fault (although characterized as contributory negligence) caused the accident should not be disturbed.
NOTES
[*] Honorable Thomas C. Wicker, Jr. served as Justice Ad Hoc in place of Justice Luther F. Cole, recused.
[1] Louisiana Animal Breeders Cooperative owned one-third of the bull and Atlantic Breeders Cooperative owned two-thirds.
[2] Contributory negligence as a defense in relational responsibility strict liability actions has been rejected in several cases. Alford v. Pool Offshore Co., 661 F.2d 43 (5th Cir.1981); Rodrigue v. Dixilyn Corp., 620 F.2d 537 (5th Cir.1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); Verrett v. Cameron Telephone Co., 417 So.2d 1319 (La.App. 3rd Cir.1982), cert. denied, 422 So.2d 164 (La.1982); Payne v. Louisiana Department of Transportation and Development, 424 So.2d 324 (La.App. 1st Cir.1982). This court in Rozell v. Louisiana Animal Breeders Cooperative, Inc., 434 So.2d at 406, cited the Restatement on Torts, 2d with approval in a footnote. The Restatement provides that contributory negligence is not a defense to the strict liability of the possessor of an animal except when there is a voluntary and unreasonable assumption of the risk. 2 Restatement of Torts 2d, § 484. See also Stone, 12 Louisiana Civil Law Treatise: Tort Doctrine, § 439, p. 566.
[3] Several early dog bite cases decided soon after Holland v. Buckley, supra, would arguably be decided differently if victim fault had been interpreted as the court does today: action that rises to the level of a substantial cause of the accident. In Dotson v. Continental Insurance Co., 322 So.2d 284 (La.App. 1st Cir.1975), writ denied, 325 So.2d 606 (La.1976), the court of appeal found victim fault in the actions of a nine year old who proceeded into a neighbor's enclosed yard contrary to the owner's instructions and who was bitten as he approached a member of the owner's family who was in the yard. In Parker v. Hanks, 345 So.2d 194 (La.App. 3rd Cir.1977), writ denied, 346 So.2d 224 (La.1977), a three judge panel with two judges concurring in result only found victim at fault for approaching the kitchen door at the rear of the owner's house unannounced while knowing that a dog was customarily kept on a chain near the house and the chain ran under the door. In Parks v. Paola, 349 So.2d 896 (La.App. 1st Cir. 1977), writ denied with Tate and Dixon, JJ. voting to grant, 350 So.2d 1212 (La.1977), the court of appeal found victim fault because the nine year old who had frequently played with the dog without incident entered property uninvited, the dog was chained, and two children leaving the property warned that the dog might bite. In Duplechain v. Thibodeaux, 359 So.2d 1058 (La.App. 3rd Cir.1978), the court of appeal interpreted victim fault to be the actions of a ten year old who was aware of the dog's presence, had been warned to stay away, had walked past the house with a warning sign posted, and had used a safe route the first time but chose an alternate route the second time within the dog's range. In none of these cases was there evidence that victim had teased or provoked the dogs or in any other way caused the dogs to respond with a bite. The courts essentially held victim fault to be getting too close to these dogs, when the victims knew or should have known of the danger.
[1] I dissented when this case was previously before us because I did not consider that defendant owners should be held strictly liable. Rozell v. Louisiana Animal Breeders Cooperative, Inc., et al., 434 So.2d 404 (La.1983).