GUIDRY, Judge.
Plaintiff, Lynn A. Goutierrez, appeals a judgment rejecting his demand for damages for personal injuries sustained when he was stepped on by a race horse owned by defendants. Robert Wayne Brasseaux, Peggy M. Brasseaux, Genevieve Broussard and R & J Quarterhorse Stables were named as defendants. The Brasseauxs filed third party demands against State Farm Fire and Casualty Company (State Farm), their homeowner’s insurer, and National Union Fire Insurance Co. of Pittsburgh, PA (National Union), which had issued a comprehensive general liability insurance policy in the name of Robert W. Brasseaux & Associates, Inc. The Bras-seauxs, along with Genevieve Broussard and R & J Quarterhorse Stables, also brought a third party action against Ned Goutierrez, Jr., plaintiff's brother and Gou-tierrez Racing Stables. Prior to trial, National Union was dismissed from the case without prejudice.
After a trial on the merits, the trial court determined that (1) the owners of the horse in question, Peggy M. Brasseaux and Genevieve Broussard, were strictly liable to the plaintiff under La.C.C. art. 2321; (2) Lynn *553 Goutierrez had assumed the risk of the injuries which he sustained and his fault was quantified at 100%, thus relieving all defendants of liability; and, (3) coverage by State Farm was excluded under the “business pursuits” exclusion of the policy. Judgment was rendered pursuant to these findings from which plaintiff has appealed.
On appeal appellant contends that (1) the trial court erred in finding that he assumed the risk of his injury; and, (2) the trial court erred in failing to find that Robert Brasseaux’s actions were negligent and a cause-in-fact of plaintiffs injury.
The pertinent facts of this case are accurately summarized in the trial court’s written reasons for judgment as follows:
“The Court finds that on this date [June 3, 1983] the plaintiff was working in concert with his brother, Ned Goutierrez, Jr., acting as trainers for the quarterhorse ‘Ryan’s Action,’ which was owned by Peggy M. Brasseaux and Genevieve Broussard. Ned Goutierrez, Jr. was a licensed trainer of quarterhorses and the plaintiff had held a license but it was suspended at the time of the accident. Nevertheless, Ned and Lynn Goutierrez had agreed to train this horse and part of the training consists of grooming, medicating, feeding, running, walking, riding, transporting the horse from the farm where the horse was located to the Delta Downs racetrack in Vinton, Louisiana, and brining [sic] the horse back after the race. The accident occurred at the farm owned by Robert Wayne Brasseaux, the husband of Peggy Brasseaux, one of the horse owners. On the date in question there was some difficulty in getting ‘Ryan’s Action’ into the horse trailer owned by Mr. Brasseaux. Frequently there is no problem in getting horses into or out of a trailer but sometimes these problems are presented, as happened in this case. There are several ways to get them into the trailer: one is to coax them in, one is to lead them in, one is to use a lip chain and pull them in, another is to hit them with a whip, another is to crack a whip hoping the noise will move them in, and another method is for two people to get to the rear of the horse, lock arms below the tail of the horse, one being on the right side and one on the left, and trying to push the horse in. It was this latter method that was being used with Mr. Brasseaux on the right side and the plaintiff on the left side. The horse was being recalcitrant and started backing out and in so doing stepped on the plaintiff’s foot, causing him to fall down and incur serious injuries to his knee.”
Appellant urges that the trial court erred when it applied the doctrine of assumption of the risk under the recited circumstances. Plaintiff initially contends that Robert Brasseaux, as a co-owner of Ryan’s Action, ordered him to utilize the loading method of locking arms and pushing on the horse in order to get it into the trailer, therefore, he did not voluntarily assume the risk of injury attendant with such method.
There is no evidence in the record supporting plaintiff’s contention that he was ordered by Robert Brasseaux to use the “locked arms” loading method. The record reflects that after several unsuccessful attempts by Ned Goutierrez to simply lead Ryan’s Action into the trailer, Ned suggested they get out the whip to either strike the horse or startle it with the noise. Robert Brasseaux countered this suggestion with another suggestion, i.e., that they first try the “locked arms” method of loading. Neither Ned nor Lynn disagreed with this counter proposal. Rather, Lynn simply moved to the left rear of Ryan’s Action and Robert to the right rear, and the two clasped arms and proceeded to push on the horse’s rear end with Ned leading the horse into the trailer.
Plaintiff urges that he did not voice any protest to the suggested method of loading because Robert Brasseaux was a co-owner of Ryan’s Action. Plaintiff argues in brief that “... one cannot voluntarily assume the risk when he fears losing his job if the [sic] does not follow the commands of the owner of the animal”. Plaintiff's argument that he feared he would lose his job if he protested is tenuous at best. The record reflects that Robert Brasseaux and *554 the Goutierrez brothers are relatives and lifelong friends. At the time of the accident, Brasseaux was allowing Lynn and Ned to use his barn to carry on their horse training operations under the title “Gouti-errez Riding Stables”.[1] Although the record does indicate that Robert Brasseaux spent much of his spare time around the horses and took a very active interest in the training of his horses, there is no evidence in the record to indicate that he ever used his position as co-owner of a horse to dictate to Ned or Lynn specifically how the horses should be trained or managed. Lynn and Ned were certainly in a position to tell Robert if they felt that his suggestion was too dangerous and even to refuse to load the horse in the suggested manner. They did neither. We reject appellant’s contention that he was somehow coerced into participating in the loading operation as speculative and not supported by the evidence.
Alternatively, appellant argues that the trial court erred in applying the doctrine of assumption of the risk to the wrong risk. Lynn urges that the trial court found that the risk which he assumed was that the horse would back up and step on his foot. He urges that this was error because the risk giving rise to his injury, which he did not assume, was that Robert Brasseaux would fail to let go of his arm once the horse stepped back onto his foot, thus causing him to fall and injure his knee. Plaintiff argues that Robert continued holding onto his arm even after the horse stepped back onto his foot, thus causing him to fall and twist his knee. He argues that had Robert let go of his arm as soon as the horse started to back up, he would not have sustained a serious knee injury and he did not assume that risk.
In addressing this argument, the trial judge stated in his written reasons for judgment:
“The Court rejects the contention that Mr. Brasseaux held tightly onto the plaintiff’s arm, which caused him to fall. Rather, this Court finds that the plaintiff fell because of the actions of the horse. The facts also show that quarterhorses are not particularly docile and that they are somewhat high strung, that they bite, that the [sic] kick, that they push, that they throw riders, and sometimes they cause trouble loading or unloading from horse trailers”.
Although plaintiff testified that Robert Brasseaux did not release his arm until after he had fallen to the ground, Robert testified that he released Lynn’s arm as soon as the horse started to back up, for otherwise he would have also fallen down as the horse backed out of the trailer.
Where there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding of fact, a reviewing court will not disturb such finding on appeal in the absence of manifest error. Canter v. Koerhing Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Deville v. Port Pipe Terminal of Louisiana, Inc., 419 So.2d 16 (La.App. 3rd Cir.1982), writ denied, 422 So.2d 424 (La.1982). The trial judge was in a better position to evaluate this conflicting testimony and the witnesses’ credibility and we find no clear error in his finding that Robert Brasseaux did not continue to hold on to plaintiff’s arm after the horse backed out of the trailer. We therefore reject the plaintiff’s argument that the trial court considered the wrong risk in applying the doctrine of assumption of the risk. We next consider whether under the recited facts the trial court correctly concluded that plaintiff assumed the risk of injury such as to bar his recovery.
In the recent case of Rozell v. Louisiana Animal Breeders Cooperative, Inc., 496 So.2d 275 (La.1986), the Louisiana Supreme Court thoroughly discussed the doctrine of assumption of the risk as follows:
“To assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm and must understand *555 and appreciate the risk involved and accept it as well as the inherent possibility of danger because of the risk. Lytell v. Hushfield, 408 So.2d 1344 (La.1982). The opinion in Dorry v. Lafleur, 399 So.2d 559, 562 (La.1981) adopted the expression of assumption of the risk contained in the Restatement, Second, Torts, Section 496 D:
“ ‘Except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant’s conduct unless he then knows of the existence of the risk and appreciates its unreasonable character. Comment b explains:
The basis of assumption of risk is the plaintiffs consent to accept the risk and look out for himself. Therefore, he will not be found, in the absence of an express agreement which is clearly so to be construed, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character and extent which make it unreasonable. Thus the condition of premises upon which he may enter may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.’ ” (Emphasis added).”
In Rozell, an employee of L.S.U.’s Dairy Improvement Center was injured when he entered a bull pen alone and was subsequently attacked. On remand from the Supreme Court,[2] the trial court held that Rozell was contributorily negligent and equated this to a finding of victim fault, thus barring his recovery. On appeal, the First Circuit affirmed,[3] but held that Rozell had assumed the risk. The court also noted that the liability of the bull owner was strict rather than absolute. The Supreme Court reversed both lower court rulings, finding that Rozell had not assumed the risk because it was not established that he appreciated the unreasonable character of the risk presented. The court concluded that, “[n]ot only did Rozell consider the risk a reasonable one, an objective evaluation would classify his chance of being attacked in this situation as remote. Rozell did not assume the risk”. The Supreme Court’s decision was obviously heavily influenced by Rozell’s own testimony that he believed that he had time to enter the bull pen and open the gate to the pasture before the bull would have time to move out from his feed stall and around the stall’s pipes to his position in the pen.
In the instant case, the trial court found the owners of Ryan’s Action to be strictly liable under La.C.C. art. 2321, but additionally found that Lynn Goutierrez had assumed the risk of his injury and assessed his negligence under the assumption of the risk doctrine at 100%.
The Supreme Court in Rozell, supra, proceeded to discuss the defenses under La. C.C. art. 2321 as follows:
“Assumption of risk and contributory negligence are common law defenses to negligence actions. C.C. 2317 and C.C. 2321 are based on neither negligence nor fault, but the obligations arising from custody and ownership. The defenses to such cases are: (1) fault of the victim; (2) fault of a third person; (3) irresistible force. Each is a causation defense, and differs from negligence of the injured person.
Victim fault was recognized as a defense to a C.C. 2321 strict liability action in Holland v. Buckley, supra at 117-18. The court in Holland cited Planiol’s summary of judicial interpretation of the French Civil Code equivalent of C.C. 2321: ‘“... the person responsible for *556 the damage avoids liability by proving that the accident was due to a fault of the victim, or to a fortuitous event.’ Pla-niol, Civil Law Treatise, Volume 2, Part 1, No. 920 (p. 517) (LSLI translation, 1959).” “Fault of the victim ... means the conduct of the victim was a substantial factor in causing the injury complained of.” ' Ruffo v. Schwegmann Brothers Giant Supermarkets, Inc., 424 So.2d 470, 473 (La.App. 5th Cir.1982), citing Sumner v. Foremost Insurance Co., 417 So.2d 1327 (La.App. 3rd Cir.1982). Rozell did nothing to cause the bull to attack him. Victim fault must rise to the level of causing the accident before it will bar recovery.2 Otherwise, the doctrine of strict liability would have no utility. The liability would not be “strict.” Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985). C.C. 2315, interpreted as it was until recently as liability for negligence, rounded out with common law defenses which were thought to apply to all personal injury cases, left no room for the use of C.C. 2317 and C.C. 2321. Lack of use led to atrophy of the strict liability doctrines, while they flourished in other states.
On the other hand, the use of the strict liability doctrines leaves no room for contributory negligence as we have known it. Victim fault, to be a defense, must be at least a substantial cause.[3]”
(footnotes omitted).
We have considered this record, in light of the principles enunciated in Rozell, and conclude, for the reasons which follow, that the trial court did not err when it dismissed plaintiff’s demand because of victim fault, i.e., assumption of the risk.
Plaintiff is an experienced horse trainer with eighteen years of experience in training and working with horses. He received his trainers license from the Louisiana State Racing Commission when he was approximately 20 years old. Lynn and his brother, Ned, formed the partnership of Goutierrez Racing Stables in 1976 for the specific purpose of training quarterhorses. Lynn admitted at trial that he was well aware of the fact that quarterhorses, and especially Ryan’s Action, are high strung animals with a propensity to cause harm. He also stated that he had previously been stepped on and bitten by horses and that he considers them to be dangerous animals. Although Lynn stated that he had never utilized the “locked arms” method of loading horses prior to the date of the accident, he had seen other horse trainers utilize such method.
In discussing the various methods of loading horses into a trailer, Lynn testified at trial as follows:
“We always whip a horse to get him in the trailer because we know the danger of trying to get close to a horse especially a horse on race day. He’s feeling good. He’s nervous and he knows he’s going to race. It’s kind of dangerous to clutch hands and try to push a horse in the trailer and also like a baby. You don’t know what he’s going to do. He can kick you. He can step on you. He can do all kind of things. In my opinion, my method of loading a horse in the trailer, I whip him to get him in the trailer.”[4]
At trial, several experienced horse trainers testified that the “locked arms” method was a widely recognized and widely used method of loading racehorses in a trailer, although they conceded that it was one of the most dangerous methods since it involved such close contact with a high strung animal.
We have little difficulty in concluding that Lynn Goutierrez assumed the risk of his injuries when he attempted to load Ryan’s Action into the trailer by way of the “locked arms” method. As an experienced horse trainer, Lynn was aware of the excitable nature of Ryan’s Action, particularly *557 on a race day. Lynn specifically understood and appreciated the risk that during loading the horse might either kick or step on him. Lynn clearly appreciated the unreasonable character of the risk presented when the “locked arms” loading technique was employed and voluntarily chose to assume such risk. We conclude that his conduct constituted “victim fault” as his action in attempting to push Ryan’s Action into the horse trailer was a substantial cause of the accident.
Our ultimate finding that plaintiffs right to recover damages under C.C. arts. 2317 and 2321 is barred by reason of assumption of the risk likewise disposes of appellant’s alternate contention of error in the trial court’s dismissal of plaintiff’s negligence action (C.C. art. 2315) against Robert Bras-seaux.
For the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant’s costs.
AFFIRMED.

. In exchange for the use of the barn, the Gouti-errez brothers only charged Brasseaux $6.00 per day per horse for the training of his horses, as compared to their usual rate of $12.00 per day per horse.

. Rozell v. Louisiana Animal Breeders Cooperative, Inc., 434 So.2d 404 (La.1983).

. Rozell v. Louisiana Animal Breeders Cooperative, Inc., 486 So.2d 968 (La.App. 1st Cir.1986).

. At oral argument appellant conceded that one of the recognized risks inherent in the use of the "locked arms” loading method is that the horse will back up and step on a loader’s foot. Appellant likewise conceded that he was fully aware and did assume such risk but argued that he did not assume the risk that Brasseaux would continue to hold onto his arm after the horse backed up and stepped on his foot.